## Case No. 15,900.

### UNITED STATES v. NOTT.

[1 McLean, 499.] [1]

Circuit Court, D. Ohio. July Term, 1839.

CRIMINAL LAW—CONFESSIONS—OFFENCES AGAINST POSTAL LAWS.

1. Confessions to be excluded from the jury, must have been made by the prisoner under some hope of advantage, or extorted by some apprehension of danger. Some of the modern cases in England, have perhaps, been carried further than the reason of the rule requires, in refusing to admit, as evidence, the confessions of the prisoner.

[Cited in U. S. v. Stone, 8 Fed. 255.]

2. Each case must be governed by its own circumstances.

[Cited in U. S. v. Stone, 8 Fed. 254.]

3. Under the 21st section of the post office law of 1825 [4 Stat. 102], no one can be convicted who is not employed in the post office department.

4. Some evidence is necessary of the genuineness and value of bank notes, charged to have been stolen out of a letter.

5. Taking the notes greatly aggravates the offence, and the taking must be charged and proved, as a substantive part of the offence.

6. To constitute the offence it is not necessary that the letter stolen should have been taken out of the post office building.

7. To convict a person of stealing a letter, &c., who is employed in the department, such employment must be distinctly alleged and proved.

[This was an indictment against Leoneal C. Nott, charging him with abstracting bank notes from a letter.]

The District Attorney, for the United States. Swayne & Miner, for prisoner.

OPINION OF THE COURT. The defendant having been indicted at the present term for stealing bank notes, out of a letter received in the post office at Akron, pleaded not guilty, and went to trial. The indictment contained twelve counts which will be more particularly noticed hereafter. Francis Dod, a witness, states John Dod wrote a letter at his request to Elizabeth Dod, directed to Akron, in which were enclosed two ten dollar bills; one on the State Bank of Indiana, and the other on the Cleveland Bank. He identifies the notes presented at the trial. The letter not being received by Elizabeth Dod, the witness went to Akron to enquire after it, about the 8th May last. On enquiry at the office, the letter was handed to him, which he opened and found that the money had been taken out. The letter had been first charged with 12½ cents postage, but had subsequently been charged 37½ cents. Witness complained to Mr. Johnson, the post master, of the loss of the money; and while they were conversing on the subject, the defendant happened to pass by. The defendant before this had been a regular assistant post master at Akron, but a short time before had left the office. He still, however, at the request of the post master, gave occasional instruction to the assistant in the office, who had little or no knowledge of the business. The post master spoke to the defendant and enquired whether he had any knowledge of the letter, the witness at the same time handing him the letter. The defendant said that the boy in the office, informed him the letter had been opened by Elizabeth Davis, supposing it was intended for her, but finding it was not, she returned it, and the letter was resealed, that the letter contained two bank notes, which induced the defendant to alter the charge of postage to thirty-seven and a half cents. The post master states, that the next day being in company with the defendant and several others, he charged the defendant with stealing the money. Some one present observed, how can this matter be settled, and the defendant observed, how can it be, seeing he, the post master, was so determined. The post master observed that he had nothing against the defendant but this, and that he had no vengeance to gratify; but that the transaction should be prosecuted and exposed. The defendant then asked the post master to walk with him. They went up to the third story of the house where the defendant lodged, and the defendant stepped into another room and soon returned with one of the notes, which the letter contained, in his hand. The other he had passed away to a person in town. He confessed that he took the money, &c. And the defendant's counsel moved the court to exclude this testimony from the jury, and also the whole evidence that has been heard, being connected with it, on the ground that the confession was made under such circumstances, as to render it inadmissible. And 19 E. C. L. 519, 533, 444; 2 Russ. 648, 645; 2 Starkie, 27, and 6 Hals. [11 N. J. Law] 183, were read to sustain the position taken.

Confessions, as has been often said, should be received with great caution, for experience has shown that they often mislead, and sometimes convict an innocent person. Under a

[1] [Reported by Hon. John McLean, Circuit Justice.]

charge of a highly criminal offence, the mind must always be agitated, and may be influenced by hopes or apprehensions, which it is difficult, if not impossible sometimes to comprehend. To make a confession, therefore, evidence, it must be made, so far as can be ascertained, in the absence of any excitement which creates a hope to obtain favor, or to avoid a threatened punishment. But the court in such cases must judge of the motives which induce the confession, from the confession itself, and the circumstances under which it was made. The modern doctrine on this subject in England, seems to have been carried great lengths in favor of the prisoner. And in one of the cases read, the confession was excluded because a by-stander, unknown to the prisoner, and who had no right to interfere, observed in his hearing that he had better confess. This was going farther to exclude confessions than the reason of the rule would seem to require. And in some of the cases, all subsequent confessions are supposed to have been made under the influence which at first operated; and on this ground they have also been excluded from the jury.

It is difficult to lay down any precise form of words which, if addressed to the prisoner, shall exclude his confessions. Every case must be governed by its own circumstances. In the present case, so far as the facts are developed, there seems to have been no promise held out to induce a confession, nor any threat to extort one. On the contrary, the post master, by his remarks, guarded the defendant against any such motive. For, while he informed him that he had no vengeance to gratify, he declared that the case should be prosecuted, and the whole matter exposed. There is, therefore, no ground, under any of the cases cited, to exclude the confession. But if a promise had been made as an inducement to the confession, the facts connected with the confession could not be withdrawn from the jury. And in this case the facts connected with the confession of the defendant, unless explained, go strongly to fix the offence upon him. In company with the witness, he went to his lodgings, and there he handed to the witness one of the notes, which is proved to have been enclosed in the letter. Now unless he shall show how he came by this note, the presumption that he feloniously abstracted it from the letter is strong. But the whole confession is clearly admissible to the jury. In a subsequent part of the case, a witness, being called by the defendant, proved, that before the confession of the defendant, stated by the post master, an assurance was given him, that the whole matter, might, perhaps, be compromised, if he would confess, and that the prosecutor would, probably, be satisfied on the reimbursement of his expenses. And the court then stated to the counsel that the facts which the first witness does not contradict, change the aspect of the evidence, and render the confession inadmissible. And they remarked that in their charge

to the jury they should exclude, as evidence, the confession.

The evidence being closed, the defendant's counsel prayed the court to instruct the jury that they could not find the defendant guilty, under the first, second, and twelfth counts in the indictment, unless they are satisfied from the evidence that at the time the offence is alleged to have been committed the letter in question was "intended to be conveyed by post." In the three counts specified, the letter is described as a "letter intended to be conveyed by post." By the 21st section of the act to regulate the post office, &c. it is provided "that if any person employed in any of the departments of the post office establishment shall unlawfully detain, or open, any letter, packet, or mail of letters, with which he shall be intrusted, or which shall have come to his possession, and which are intended to be conveyed by post, on conviction shall be punished, &c." And if such letter contain a bank note or any article of value, the punishment is greatly increased. This provision is only applicable to a person employed in the post office department, as a carrier, a post master or assistant post master, into whose possession letters intended to be conveyed by post, ordinarily come. It does not, therefore, apply to any one disconnected with the post office, who may steal a letter from a post office or the mail. Under the regulations of the department it is made the duty of a carrier to receive letters, between post offices, and he is required to deposit them to be mailed in the first post office on his route. Should he purloin a letter thus received, instead of depositing it in a post office, he would be guilty of violating the law. The letter was intended to be conveyed by post, and it came into his possession, in the line of his official duty. So a letter, intended to be conveyed by post, comes into the possession of a post master or assistant post master, when deposited in a post office, to be forwarded by post. And the section, undoubtedly, reaches the case, where a letter is purloined by a person employed in the department, either from the office to which it was directed or on its passage to such office. But the counts must charge the defendant, as employed in the post office department, and it must be shown that he was thus employed before he can be found guilty, under this section of the statute. The court are also requested to charge the jury that they cannot convict the defendant under the seventh, eighth, ninth and tenth counts, unless they are satisfied from the evidence, that the notes in question are genuine and are of some value. The 22nd section of the post office act, under which this indictment seems principally to have been framed, provides, that "if any person shall steal the mail, or shall steal or take from, or out of, any mail, or from, or out of, any post office, any letter or packet; or if

any person shall take the mail, or any letter or packet therefrom. or from any post office, whether with or without the consent of the person having custody thereof; and shall open, embezzle or destroy, any such mail, letter or packet, the same containing any article of value, &c., shall be punished, on conviction, as therein provided."

In a late case in England it has been decided (Rex v. Ellins, Russ. & R. 188) that the genuineness of an instrument enclosed in a letter, under a provision somewhat similar to the above, need not be proved. The statute contemplates that the article enclosed shall be of some value; and on this ground the punishment inflicted is much more severe, than where a letter is abstracted which contains no article of value. This article would seem, therefore, to constitute an important part of the offence, and some evidence of its value must, therefore, be given. It is clearly not necessary to prove the hand writing of the presidents and cashiers, whose signatures appear on the face of the notes, by one who has seen them write. Any one whose business or profession leads him to an acquaintance with such notes, may prove them to be genuine. And the jury, in the exercise of their judgment, may find them to be genuine from an inspection of them, and the acts of the defendant. The defendant passed one of the notes, as appears from the evidence, at its full nominal value, and if this and the other evidence in the case shall satisfy the jury that the notes or either of them were genuine and of some value, they can act accordingly. A counterfeit note being of no value, or a note on a bank which never existed, or is wholly insolvent, would not constitute the offence under the statute. In these cases the notes enclosed in the letter stolen, are seldom recovered, and the only evidence of their genuineness is that they appeared to be so, to the person who enclosed them; and that being on solvent banks, they were of value. This evidence has often been held sufficient, to go to the jury, and on which convictions have been had.

The court are further requested to charge the jury that they cannot find the defendant guilty under the fifth, sixth, seventh, eighth. and ninth counts, unless they are satisfied from the evidence that the letter therein mentioned was taken from and out of the office by the defendant. And an authority is cited from 19 E C. L. 533, sustaining the instruction asked. In this report the British statute is not recited. so that it can be compared with the act under consideration. The words of the act are, if any person "shall steal from, or out of any post office." And the instruction supposes that the offence is not perpetrated under this section, unless the letter shall be taken out of the post office building. That if the letter be feloniously taken and rifled of its contents, by an individual who returns it before he leaves the post office room, the offence is not committed. This would indeed be a singular construction of the statute. The words "post office." as used in this section, do not mean the building in which the post office is kept, but the case or pigeon holes, where the letters are deposited. And when a letter is feloniously taken from the place where it is ordinarily and properly deposited, the offence is consummated. And it is of no importance to enquire, whether the offender remained in the room, or went out of it. In the present case, if the prisoner opened the letter, took out the money, resealed the letter, and returned it to the place of deposit, before he left the room, he is guilty of the offence under the statute.

And the defendant's counsel further ask the court to instruct the jury that they cannot find the prisoner guilty under the first, second, third, fourth and twelfth counts, which charge the prisoner as an assistant post master, unless they shall be satisfied from the evidence, that he was at the time the offence is alleged to have been committed actually employed under a valid contract as an assistant. Where a person not employed in the post office department, shall be convicted of stealing a letter from the mail or a post office, which contains bank notes, &c. he is punishable by imprisonment not less than two. nor more than ten years. But if such person be employed in the department, he is punishable by imprisonment not less than ten years. nor more than twenty-one years. This difference of punishment in the two cases, shows how much, in the opinion of the legislature, the offence is aggravated, when committed by a person employed in the department. The fact, then, of his employment must not only be stated in the indictment, but it must be distinctly proved. The employé within the law is not a casual assistant, who may occasionally be in the post office, and assist in distributing or making up the mail. But he must be a regular assistant employed by the post master, and whose duty it is to perform the various functions which appertain to the office. The prisoner, it appears, had been a regular assistant in the post office at Akron, but some time before this occurrence he had left the office, and engaged in other business. He was under no obligation to act as assistant post master. nor did he receive a compensation. The extent of his engagement was, in the absence of the post master, to give some instructions to the boy in the office respecting his duties, of which being inexperienced, he was ignorant. This, we think, is not an employment within the law. We do not say that a regular written contract would be necessary, but we are of the opinion that the person, to come within the law, must be a regular assistant.

The jury will disregard the confessions of the prisoner, because made under circumstances which ought to exclude them from

consideration. But they will give full weight to the facts connected with the confessions. The notes taken out of the letter were in possession of the prisoner, and he has wholly failed to show in what way he received them.

Much has been said, gentlemen of the jury, of the high importance of this case, and of the ruinous consequences of a conviction. The case is important, but the court and jury must be governed by the facts and the law, and are not answerable for the consequences. If these shall cover the defendant with infamy, and blight his future prospects, it is the result of his own acts. His reproaches should be against himself, and not against the law or the administrators of the law.

The jury, after a short retirement, returned a verdict of guilty. And at a subsequent day of the term, the prisoner being brought to the bar, and having nothing to allege by himself or his counsel, why sentence should not be pronounced, the court addressed him as follows:

You have been indicted, tried, and convicted of a highly penal offence. An ample opportunity has been afforded you to meet the accusation; and you have been aided in your defence by able, experienced, and zealous counsel. Nothing has been left undone which could, with propriety be done, to shield you from the legal consequences of your own voluntary act. The court are satisfied with your conviction. The jury were bound by their oaths and the testimony in the case, to find you guilty; and no doubt can exist of your guilt. You are young. The morning of your life has not yet passed away; and how deeply is it to be lamented, that that morning is overcast, by so dark and heavy a cloud. There is but little in the future to cheer you. That future which promises so much to our hopes, and which is so well calculated to mitigate the misfortunes of life. You cannot expect to regain what you have lost One step, one act, has fixed your destiny in this life. You had a hard struggle to overcome the upbraidings of conscience, in the perpetration of the offence; and when it was consummated, this faithful monitor, by your own confession, left you ill at ease. Truly the way of the transgressor is hard. You repented, but repentance came too late. The law had been violated and its penalty incurred. You must be cut off from society; and from your nearest and dearest connections. You must put on the badges of disgrace, and be associated with men rendered infamous by crime. There is but one resource to which you can look for consolation; but that is a source which never fails. It is found in the mercy of Him, who pardons the vilest offenders. Rest not until you shall obtain his pardon, and then you shall have a hope that strengthens and brightens, when all around you shall fade away and die. You are not hardened in vice. Your character is proved to have been good, and this, perhaps, is the first offence which has rendered you obnoxious to the laws of the country. Submit to your punishment, as the only atonement you can make to a violated law; and amidst the discouragements with which you are surrounded, thoroughly reform your life. If this shall be your determination, you need not despair. Your youth, your former good character, and the remorse which you have evinced, are taken into view by the court in fixing your punishment. The court sentence that you be confined in the penitentiary of this state, at hard labor, for two years from this time.