THE STATE v. JOHN F. WILLIAMSON, Appellant.—99 S. W. (2d) 76.

Division Two, November 17, 1936.

*Raymond S. Roberts, Alfred F. Moeller* and *Harry J. Petrequin* for appellant.

1040

*Roy McKittrick*, Attorney General, and *Franklin E. Reagan* for respondent.

ELLISON, J.—The appellant was convicted of murder in the first degree and his punishment assessed by a jury at death for the fatal shooting of one George Williams, a recluse, who lived alone in a cabin in a wooded section of Ste. Genevieve County. The body of Williams was found in the woods about half a mile from the cabin late in the afternoon of Sunday, August 11, 1935. The undertaker testified from the condition of the corpse that death had occurred some thirty hours earlier. The cabin of the deceased had been broken into and certain articles of personal property taken therefrom, which were later found in the appellant's possession. While the sheriff, coroner and others were on the way to recover the body they came upon the appellant, with a drayman he had hired, in the act of hauling two hogs from the premises of the deceased. He was seen going in the direction of Williams' home and later returning therefrom carrying something in sacks about the time the killing must have occurred. He admitted the murder to the officers sometime after his arrest and signed a written confession. No evidence was introduced in his behalf before the jury, though he did testify before the court in the absence of the jury relative to this confession.

The appellant's motion for new trial and typewritten brief contain only two assignments of error: (1) that his confession was not voluntary, and was obtained through promises of clemency made by the officers, and should not have been admitted in evidence; (2) that the argument of the Assistant Attorney General at the trial was improper and prejudicial.

I. Before passing on the assignment that the appellant's confession was induced through promises of clemency, we must review the evidence further. The day after the corpse of Williams was found the appellant told the sheriff, Henry Drury, that he had been convicted of murder in Illinois and had served twenty-one or twenty-two years of a life sentence in the penitentiary at Chester, Illinois; and that he had violated his parole and come to Missouri. He was

arrested on August 17 and thereafter on several occasions the sheriff tried to get him to confess, but he denied any knowledge of the homicide. Some three weeks before the trial (which began on October 25, 1935) the sheriff read to the appellant a telegram he had received from the warden of the Chester penitentiary, and asked the appellant if he would be willing to go back to Chester. The appellant said he would. At various times after that the appellant said he would like to return to the Chester penitentiary; that he would know a lot of the boys over there, and would prefer going there to going to the Missouri prison.

Two days before the trial the sheriff engaged the appellant in conversation and asked him if anybody was with him when he shot Williams and the appellant said, ''Nobody.'' The sheriff inquired, ''Were you alone?'' and the appellant answered, ''Yes.'' Thereupon the appellant said, ''Wait a minute, before I tell you any more, I want to know what I am going to get out of this.'' The sheriff told him he would recommend to the prosecuting attorney that he be sent back to Chester. The appellant did not tell the sheriff any more at that time, but the next day made a written confession to other officers—deputy sheriffs. On the witness stand the sheriff said he presumed his promise to make this recommendation had some influence in inducing the appellant's admissions, but he insisted repeatedly that he made it plain he had no power other than the making of a recommendation, and that the disposition of the case was up to the prosecuting attorney and circuit judge. He said he resorted to no persuasion or coercion and that the appellant's admissions were voluntary. He was not present when the appellant signed a written confession the next day. He could not remember telling his deputies about the appellant's admission to him—though he did tell Mr. Reagan, Assistant Attorney General—and he did not think they knew of it when they obtained the written confession. But they did know the appellant was getting restless in jail, and the other prisoners said he was probably about ready to make a statement.

Deputy Sheriff Turner testified that he brought the appellant from the jail to the sheriff's office the day before the trial. He did not recall that he knew the appellant had made admissions to the sheriff on the day previous. The appellant had talked to him about going to Chester, and he told the appellant that so far as he was concerned it was immaterial, and that he would recommend it to the sheriff. He said that to the appellant before he took his written statement. He told him if he would make a complete statement he, Turner, would recommend his being sent to Chester; but he only said he would make that recommendation to the sheriff and that it would not be final as he had no authority to promise and could only recommend.

Deputy Sheriff George Rozier testified he was present when the

appellant signed the written confession. Deputy Sheriff Turner and Mr. B. K. Miller, county agent, were there at the time. Nobody made any threats against the appellant or promises to him while the witness was present. Rozier asked him if the statement was voluntary and he answered that it was. It was written with a lead pencil by Deputy Sheriff Turner and was a faithful report of what the appellant said. It was read to him two or three times. Then Mr. Miller was called in to witness the signature of the appellant and the statement was read again in his presence.

On cross-examination witness Rozier testified that when the written statement was taken he did not think he knew the appellant had talked to the sheriff along the same line the day before. He declared, "I don't believe I paid much attention;" then he answered more positively that the sheriff had not at that time told him about his conversation with the appellant. It was the first time the witness had talked to the appellant, and he did not think he knew at that time the appellant had asked if he could not go back to Chester. Then he recalled that answer and said he had learned a short time before the statement was written that the appellant would like to go back to Chester. He heard the appellant say this to Deputy Sheriff Turner and several of the prisoners, but the witness did not hear anyone say to the appellant that a recommendation to that end would be made.

B. K. Miller, the county agricultural extention agent, testified Deputy Sheriff Rozier called him into the sheriff's office to witness the statement made by the appellant. Deputy Sheriff Turner read it aloud and asked the appellant if he was willing to sign the statement—if it was all right. The appellant inquired if it should be typewritten and Turner told him it would be all right as it was and then the appellant signed the statement after it had been read to him. Nothing was said in Mr. Miller's hearing about the appellant's going back to Chester. No threats or promises were made to him.

On this showing, the State's attorneys offered the written confession in evidence, whereupon counsel for the appellant objected on the ground that it was obtained through the promises of the sheriff and Deputy Sheriff Turner that if he would confess they would recommend his being sent back to the penitentiary at Chester, Illinois. The objection is long and reviews the testimony above set out, but that is the substance of it. Thereupon the court suggested that there had been no proof on the part of the appellant as to the effect the promises of the officers had on him.

The appellant was then called to the stand. He said he signed the written confession "because they, both deputies, promised me they would recommend me to the Chester penitentiary." Later he said it was because "they" promised to recommend his being sent to

Chester. The cross-examination shows it was the promises of both the sheriff and the deputies that were regarded as the basis of the claim that the confession was not voluntary. The appellant admitted he signed the statement substantially in the circumstances testified to by Turner, Miller and Rozier, and that he knew its contents. Being asked if he did not know the officers, alone, could not take him back to Chester, that they could only make a recommendation, and that the disposition of the case rested with the circuit judge and prosecuting attorney, the appellant answered that he did not know a thing about law; that he did not know what the sheriff and his deputies could do, but that they had told him they would talk to the prosecuting attorney, and he knew he had some authority in the matter. Thereupon, the State renewed its offer of the confession and it was admitted in evidence over the appellant's renewed objection and exceptions. It is as follows:

"Ste. Genevieve, Mo.
"Thursday, Oct. 24th, 1935.

"My name is John Flannery Williamson. I am making the following statement of my own free will. Without threat or promise, knowing the same can be used against me in a court of trial. I left my home at New Offenburg, Mo., on the morning of Saturday, Aug. 10th, 1935, at 7 A. M. I arrived at Geo. Williams house about 9:30 A. M. Mr. Williams was at his house when I arrived. I had been there about one-half hour when he (Williams) suggested we go out in the woods to look at a bee tree. He carried his double barrel shot gun along. After getting about one hundred and fifty (150) yards from the house, he handed me the gun, saying: 'He couldn't see to shoot a squirrel.' I taken the gun, and we went on through the woods approximately one-half ($\frac{1}{2}$) mile, he (Williams) walking in front of me, about the distance of six (6) feet. I said nothing to him but fired the shot without raising the gun to my shoulder, which was about six feet (6) distance. He didn't know at any time I intended to shoot him. He made no out cry. As soon as I knew he was dead I left and went direct to his house. He gave me two shells for the gun at the time he handed me the gun, they were dark red shells. I do not know what size shot they were loaded with. I only fired one shot, but don't remember what I did with the empty shell I shot. When I got back to the house, the door was locked. I taken the clock and put it in a small sack which I had carried from my home. I then found another sack on the porch which I put the gun in. I then taken the gun, clock, and ax and went direct to my home at New Offenburg without stopping any place. I arrived home about 1 o'clock P. M. Shortly after I got home, the same afternoon I told the little boy Charlie Holliday to clean out the gun, which he did. The followering day, Sunday, Aug. 11th, 1935, I went and ar-

ranged with Pete Iseman to go with me back to Williams place and get his hogs which we did. Mr. Williams was not at my home on Friday, Aug. 9th, 1935, or at any other time as I have previously, stated. My motive for killing Williams was to obtain the above mentioned property which I knew belonged to Williams. I John Flannery Williamson make the above statement without force or coercion, of my own free will and it is the truth to the best of my knowledge and belief.

"JOHN F. WILLIAMSON,

"Witness to Signature      "W. B. TURNER, Deputy Sheriff,

"B. K. MILLER,

"G. F. ROZIER, Deputy Sheriff."

Under the foregoing evidence was the confession involuntary, as appellant contends? It has often been ruled in this State that a confession, to be inadmissible on that ground, must have been made to a person in authority in consequence of improper influences exerted by him, and if no threats of harm or *promises of worldly advantage* were made by such officer, or by the master of the accused when directly concerned, the confession is admissible. [State v. Tharp, 334 Mo. 46, 54, 64 S. W. (2d) 249, 254; State v. Brooks, 220 Mo. 74, 83, 119 S. W. 353, 356; State v. Spaugh, 200 Mo. 571, 597, 98 S. W. 55, 62; State v. Jones, 171 Mo. 401, 406, 71 S. W. 680, 681, 94 Am. St. Rep. 786, 788; State v. Patterson, 73 Mo. 695, 706.]

There is no doubt about the fact that "a person in authority" within the meaning of the above rule would include the sheriff and deputy sheriffs who had the appellant in their custody. [16 C. J., sec. 1491, p. 727; 1 R. C. L., sec. 110, p. 565; 7 A. L. R. 427, note; 6 Am. St. Rep. 246, note; State v. Keller, 263 Mo. 539, 557, 174 S. W. 67, 72.]

The promises made must be positive in their terms or clear in implication, but it is not necessary that they offer some particular and specific advantage or favor. If they leave the accused free to exercise his own judgment about confessing, or if notwithstanding them, he does use his own independent judgment, the confession is voluntary. [State v. Tharp, 334 Mo. l. c. 56, 64 S. W. (2d) l. c. 255; State v. Hopkirk, 84 Mo. l. c. 285.] But, if, even in general terms, they suggest an advantage to be gained by the confession, 16 Corpus Juris, section 1488, page 726; and if they are reasonably sufficient to induce and do casually induce an *expectation or hope* of worldly benefit as against the pending charge it is enough to bar the confession. [1 R. C. L., sec. 102, p. 554; Underhill's Criminal Evidence (4 Ed.), sec. 268, p. 526; Wilson v. United States, 162 U. S. 613, 622, 16 Sup. Ct. 895, 40 L. Ed. 1090; State v. Hoskins, 327 Mo. 313, 317, 36 S. W. (2d) 909, 910; State v. Ball (Mo. Div. 2), 262 S. W. 1043, 1046; State v. Hart, 292 Mo. 74, 89, 237 S. W. 473, 478; State

v. Thomas, 250 Mo. 189, 210, 157 S. W. 330, 337; State v. Wilson, 223 Mo. 173, 188, 122 S. W. 671, 675; State v. Hottman, 196 Mo. 110, 127, 94 S. W. 237, 242; State v. Armstrong, 167 Mo. 257, 269, 66 S. W. 961, 964; State v. Hopkirk, 84 Mo. 278, 284.]

As stated, the promises must also be promises of *"worldly"* advantage," as distinguished from adjurations of a moral or spiritual nature; and they must be direct, as distinguished from collateral. That is to say, they must have reference to the accused's escape from punishment, or to the mitigation of his punishment, for the crime charged, and not offer merely an opportunity for the gratification of his personal desires, or for his greater comfort, or for the granting of a benefit to some third person. The logic of this rule has been questioned, but it appears to be in force in this State. [1 R. C. L., sec. 103, p. 556; 18 L. R. A. (N. S.) 827, note; 6 Am. St. Rep. 247, note; State v. Hopkirk, 84 Mo. 1. c. 286.]

We think it is clearly established by the record that the promises made by Sheriff Drury and Deputy Sheriff Turner to the appellant did arouse an expectation or hope in him that he would be sent to the penitentiary at Chester, Illinois. Their promises to that end were held out as an inducement for him to confess. The sheriff testified that when the appellant asked him the direct question, "Before I tell you any more, I want to know what I am going to get out of this," or words to that effect, he (the sheriff) replied that he would recommend to the prosecuting attorney that appellant be sent back to Chester. Deputy Sheriff Turner promised that if the appellant would make a full confession he would make the same recommendation. The sheriff testified he presumed his promises influenced the appellant; and the appellant testified that they did.

In our opinion it is also established that these promises were promises of "worldly advantage." At one place in the sheriff's testimony he quoted the appellant as saying he wanted to go to the Illinois penitentiary because he would be acquainted with "the boys" over there. This alone would probably be only a collateral benefit, which would not invalidate the confession. But there was more to it than that. The repeated conversations between the sheriff and the appellant about the latter's being sent back to the Illinois penitentiary could not have occurred without the thought being in the minds of both that if the appellant was surrendered to the Illinois prison authorities to serve out a life sentence there, he would not be and could not be held to answer for the crime charged in this State. It was therefore a promise of immunity.

The only point about which there can be any possible doubt, it seems to us, is this: Sheriff Drury and Deputy Sheriff Turner both testified positively that they made it clear to the appellant they could only *recommend* his being sent to Chester; and that the power

to dispose of the case rested with the prosecuting attorney and circuit judge, particularly the latter. The appellant in his testimony did not claim that he understood or expected the sheriffs would attempt to influence the court; but he did expect them to exert their efforts upon the prosecuting attorney, who, he thought, had some authority in the matter. The State's theory is that all this merely meant the appellant was taking a chance and knew it. We have already held the evidence sufficiently shows the promises of the officers did in fact induce a hope of clemency in the appellant. But were these promises merely to recommend to the prosecuting attorney that he be sent to the Illinois penitentiary sufficiently definite and unconditional to constitute a legal basis for the appellant's hopes?

After some hesitation we have concluded they were. In State v. White, 316 Mo. 576, 580, 292 S. W. 411, 412, the prosecuting attorney promised the defendant that if he would tell all he knew about the murder charged he would recommend a ten-year sentence. The court said: "By all the authorities that confession was not voluntary. The defendant was in jail at the time, and his interview was with the prosecuting attorney and the sheriff—persons in authority—and the law presumes that a confession thus induced is involuntary."

In Searcy v. State, 28 Tex. App. 513, 13 S. W. 782, 19 Am. St. Rep. 851, the sheriff told the prisoner if he would tell him "all about it" he would do what he could for him in his case, and the Texas court ruled that was a positive, persuasive promise, which would render a confession made in consequence of it involuntary. In Boyd v. State, 2 Tenn. 39, a confession obtained by the promise of the witness to use his endeavors to have the prosecution dropped, was held involuntary. In United States v. Nott, 27 Fed. Cas. 189, case No. 15,900, where the confession of a post office employee to the postmaster was induced by an assurance that the whole matter might, perhaps, be compromised if he would confess; and that the prosecutor would probably be satisfied with reimbursement of his expenses, the jury was directed to disregard the confession. In State v. Wood, 122 La. 1014, 20 L. R. A. (N. S.) 392, 48 So. 438, where the sheriff told the prisoner the probabilities were his neck might be saved if he made a confession, and that he (the sheriff) would do all he could to save his neck, the inducement was held improper and the confession inadmissible.

But the main contention in the brief of the Attorney General goes further than the point just ruled. He argues that notwithstanding the appellant in the beginning challenged his alleged confession as having been involuntary, and notwithstanding he so testified in the preliminary hearing before the judge, yet, since he did not take the witness stand before the jury and did not present any other testimony to them attacking the confession after it had been admitted in

evidence by the court, therefore the confession must be regarded as prima facie voluntary, and consequently properly admitted. The authority cited is State v. Hershon, 329 Mo. 469, 484, 45 S. W. (2d) 60, 65, from which the following is quoted: "Although defendant testified at the private hearing that he had been brutally treated at police headquarters and, in this testimony, denied that he made or signed the confession neither he nor any one else so testified before the jury. In the circumstances the confession was prima-facie voluntary."

A reading of the Hershon case will show, however, that the defendant there denied he had made any confession at all, repudiated his signature to his written confession, and *did not at any time object to the admission thereof in evidence on the ground that it was involuntary or coerced.* The only objection made was to specific paragraphs of the confession because their allegations were remote and prejudicial. These facts are three times stated in the opinion, and it is doubtless for that reason the case holds "in the circumstances the confession was prima-facie voluntary."

In State v. Young, 314 Mo. 612, 628, 286 S. W. 29, 33, the court commented on the fact that the defendant did not explain or contradict his confession, or call as witnesses the persons present when it was made. But in holding the confession admissible the opinion nevertheless decided the question on its merits, and did not rule his failure to testify or adduce evidence waived his objections to the confession and automatically rendered it prima facie voluntary. Likewise, in State v. Hart, 292 Mo. 74, 89, 237 S. W. 473, 478, the defendant did not testify before the court or jury. The only evidence presented with respect to his confession was the State's evidence. But in that case also, in allowing the confession to go in the court dealt with the question on its merits, and not on the basis of waiver.

On the other hand, in State v. Ellis, 294 Mo. 269, 281, 242 S. W. 952, 955 (like in this case) the appellant, though swearing in the preliminary hearing before the judge that his confession was improperly obtained, did not testify before the jury. And yet this court reversed the trial court for admitting the confession. Furthermore, in the recent case of State v. Roland, 336 Mo. 563, 565, 70 S. W. (2d) 1050, 1051, it was held that where a defendant fails to request a preliminary investigation of whether his confession was voluntary, *or* to make an offer of proof that it was involuntary, the confession may be properly admitted in evidence as prima facie voluntary. It will thus be seen the opinion does not hold the defendant must present evidence, or offer to present it; the holding is in the alternative and the ruling of the opinion by plain implication is that if the defendant challenges the confession as being involuntary and requests a preliminary investigation to determine that fact, the court must inquire into the facts whether the defendant offers any evidence or not.

It would be an obvious violation of the defendant's constitutional rights under Section 23 of Article II of the Constitution of Missouri and Section 3692, Revised Statutes 1929 (Mo. Stat. Ann., p. 3242), to hold he must testify before the jury regarding the voluntary or involuntary nature of his confession, on penalty of waiving the point if he does not. Neither, in our opinion, is it the law that he suffers that penalty if he fails to present the testimony of other witnesses on that point before the jury.

It was held in State v. Thomas, 250 Mo. 189, 210, 157 S. W. 330, 337, that when a confession is made and signed by a defendant after his arrest, the burden is on the State in the preliminary examination before the court to prove it was voluntary; and we do not find that ruling has been questioned in any subsequent decisions of this court, unless it be by implication in State v. Hayes (Mo. Div. 2), 247 S. W. 165, 168, though in that case the defendant merely objected to the introduction of his confessions as being *presumptively* involuntary, and did not request a preliminary inquiry thereinto. The doctrine is said to be unsettled in other jurisdictions. [1 R. C. L., sec. 124, p. 581. See 18 L. R. A. (N. S.) 783, note; 50 L. R. A. (N. S.) 1081, note; 38 A. L. R. 118, 120, note.]

It is evident the Hayes case just cited, and many others like it, holding a defendant's confession is presumptively voluntary, do not present the question whether the burden of *proof*, within the strict and accurate meaning of that term, rests upon the defendant to *disprove* his confession was voluntary, because it is well settled in this State that the burden of proving the defendant's guilt and every element of it beyond a reasonable doubt is carried by the State throughout the trial. If any burden is cast upon the defendant when challenging an alleged confession it can only be the procedural burden of going forward.

Whether that burden is discharged merely by making an objection to the admission of the confession in evidence on the ground that it was involuntary, and asking a preliminary inquiry into the matter, or whether the defendant must offer *some* evidence to "overcome" the presumption, is a question we need not examine further in this case, for the appellant here did all three. But we do hold that having testified and offered evidence at the preliminary hearing before the court, he had a right to stand on the showing thus made without again testifying or presenting other evidence on the issue before the jury; and that he did not thereby lose his rights—unless the State's position was improved by the evidence presented to the jury, and a prima facie showing was then made that the confession was voluntary. [See State v. Thomas, 250 Mo. l. c. 209, 157 S. W. l. c. 336.] It would be analogous to a defendant's standing on a demurrer to the evidence filed at the close of a plaintiff's cast. And we have al-

ready held that the undisputed evidence in this case shows the appellant's confession was not voluntary.

It is unnecessary for us to pass on the appellant's other assignment complaining of the argument to the jury made by the learned Assistant Attorney General since our conclusions on the assignment already discussed necessitate a reversal of the judgment and sentence and a remanding of the case for a new trial. It is so ordered. All concur.