STATE of Missouri, Respondent,

v.

Lawrence Henry HUTSON, Appellant.

No. 36887.

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 4, 1976.

Motion for Rehearing or Transfer
Denied June 15, 1976.

Floyd E. Lawson, Paris, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Special Judge.

Appellant, Lawrence Henry Hutson, was convicted by a jury of murder in the first degree and was sentenced to life imprisonment. He has appealed from the ensuing judgment. We affirm.

Appellant's only point is that the trial court erred in admitting in evidence his confession because it was "obtained as the result of promises or inducements held out by the prosecuting attorney and by Captain Webster [a police officer], thus rendering the confession involuntary and inadmissible."

On December 6, 1973, the prosecuting attorney of Marion County, Missouri, and Captain Charles Webster of the Hannibal Police Force, went to the Menard State Penitentiary at Chester, Illinois, to talk to appellant who was an inmate there serving a sentence for armed robbery. At that time no charge against appellant had been filed by the Missouri authorities. After formal introductions, although the three previously knew each other, appellant was given the "Miranda" warnings by Captain Webster, and appellant then opened the conversation on the issue of "plea bargaining" by asking the prosecuting attorney what he would "recommend in the way of a sentence" if appellant would plead guilty to the murder of Charles Matson and also agree to testify against anyone else that might be involved. The prosecuting attorney first said he would recommend "about twenty-five years," but in answer to appellant's subsequent inquiry if he would recommend twenty years the prosecuting attorney replied, "Yes, I will make that recommendation." The prosecuting attorney also told appellant that he would "make no promises" (apparently meaning that he could make no promises as to the result of his recommendation), and that "It would be

nothing more than a recommendation," and "would not be binding upon any court." Appellant then said, "All right, I am going to tell you how it happened." Captain Webster then again gave appellant the "Miranda" warnings, and appellant affirmatively stated that he understood those rights, including that "he had a right to remain silent" and that "anything you say can and will be used against you in a court of law." Appellant then answered questions asked by Captain Webster, all of which were recorded on a portable tape recorder, in which he stated that he shot Charles Matson at the request of Matson's wife who agreed to pay him one thousand dollars. The recording device was in the sight of appellant, and he admitted that he knew his statements were being recorded.

The prosecuting attorney returned to Missouri and filed first degree murder charges against Bonnie Matson, the former wife of Charles Matson. No charges were filed against appellant at that time. Subsequently, appellant wrote a letter to the prosecuting attorney, postmarked January 2, 1974, in which he denied any knowledge of the murder of Charles Matson and stated that he would not be a witness to any matter of which he had no knowledge. The prosecuting attorney then filed a first degree murder charge against appellant, and at arraignment he entered a plea of not guilty. There is nothing to indicate that the prosecuting attorney ever declined to carry through with his proposed recommendation.

At the trial the questions and answers which were recorded on December 6, 1973 at the Menard prison were introduced in evidence over the objections of appellant that the statements were "the result of promises and illegal inducements offered by the prosecuting attorney" and for that reason were "involuntary" and "not binding" upon him.

Following the hearing on appellant's motion to suppress his tape recorded statement the trial court expressly found: (1) Appellant was experienced in criminal proceedings. (2) On a previous occasion, and twice on December 6, 1973, prior to making any statement appellant was informed of his constitutional rights. (3) Appellant understood his constitutional rights, and "he understandingly, knowingly, intelligently, voluntarily, and affirmatively waived said rights." (4) Appellant initiated the discussion as to what the prosecuting attorney would recommend, that "any hope for leniency came about as a product of his experienced and calculated solicitation," and that "the prosecuting attorney's statement as to what he would recommend was solicited freely and voluntarily" by appellant. (5) The tape recorded statement "was understandingly, knowingly, intelligently, and voluntarily made while defendant was in full possession of his faculties." (6) An examination of all the circumstances discloses that "the conduct of the law enforcement officers was not such as to overbear [appellant's] will to resist and to bring about a confession not freely self-determined." Appellant does not challenge any of these findings except as such challenge is necessarily contained in the contention that the statement of the prosecuting attorney that he would recommend a sentence of twenty years results in the statement being involuntary.

We have here the factual situation where appellant instigated the inquiry concerning plea bargaining, and as a result of his inquiries the prosecuting attorney told him that if he elected to plead guilty to a charge of murder, not then filed, and to testify in another case he would recommend to the court that appellant be sentenced to a term of twenty years. This was not a proposal or promise made by the prosecuting attorney to induce a plea of guilty on the part of appellant or to obtain a confession. Instead appellant volunteered to relate the facts of the homicide, or as he said, "to tell * * * how it happened." As far as the record shows neither the prosecuting attorney nor the police officer asked appellant to make a statement, but when he volunteered to do so, the statement in the form of questions and answers was recorded on tape with his knowledge and approval.

Appellant was not subjected to lengthy interrogation and there were no threats. He was not in any way mislead or given any false promise. He argues, however, that under the circumstances of this case his statement, which amounted to a confession, must be considered to have been involuntary because it was made after the prosecuting attorney answered his question and told him that he would recommend a sentence of twenty years. Appellant relies on a statement (by way of dictum, see *Pontow v. State*, 58 Wis.2d 135, 205 N.W.2d 775 (1973)), in *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) as follows: " 'But a confession, in order to be admissible, must be free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' "

The facts of the *Bram* case were that the defendant was in the custody of the police of Halifax, Canada, who had him brought from jail to a private office, and "when there alone with the detective *he was stripped of his clothing*, and either whilst the detective was in the act of so stripping him, or after he was denuded, the conversation offered as a confession took place." The detective told defendant that a person who was also being held had made a statement that he saw defendant commit the murder. Defendant replied, "He could not have seen me." No promise of any kind was made to the defendant by the detective. The court held that "the situation of the accused, and the nature of the communication made to him by the detective, necessarily overthrows any possible implication that his reply to the detective could have been the result of a purely voluntarily mental action." We thus see that the *Bram* case did not involve the issue of whether a promise of leniency made by the prosecutor to an accused during discussions concerning the disposition of the case, without anything more, results in a statement by the accused being involuntary as a matter of law. However, the dictum statement in the *Bram* case as above set out has subsequent-

ly been quoted with approval. For example, see *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). But, in the *Brady* case the court accepted the defendant's confession in the form of a plea of guilty even though it was induced by the implied promise of a lesser penalty if he waived a jury trial. The substance of the ruling in the *Brady* case was that in the determination of the voluntariness of a confession in the form of a plea of guilty, all the circumstances must be considered. It was held: "[The] Bram [case] is not inconsistent with our holding that Brady's plea was not compelled even though the law promised him a lesser maximum penalty if he did not go to trial. [The] Bram [case] dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency [but as previously noted we do not find that any promise was made] was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." Although appellant in this case was not represented by counsel when he made the statement in the form of a confession, no charge against him for the murder of Charles Matson had been filed, he had been advised twice that day and once previously of his right to counsel, and he does not now contend that he did not intelligently and understandingly waive his right to counsel.

A good, and we think correct, analysis of the decision in the *Bram* case is to be found in *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir. 1967) as follows:

"Ferrara relies on *Bram v. United States*, 168 U.S. 532, 542–543, 18 S.Ct. 183, 187, 42 L.Ed. 568 * * *. The *Bram* opinion cites with approval the statement in an English textbook that a confession is not voluntary if 'obtained by any direct or implied promises, however slight'. That language has never been applied with the wooden literalness urged upon us by appellant. The Supreme Court has

consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined * * * .' "

In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), which involved a guilty plea in exchange for a promise of leniency which promise was not kept by the prosecution, the case was remanded for a granting of specific performances of the promise or, in the alternative, withdrawal of the plea. This clearly indicates an approval of the plea of guilty, which was a confession, when the promise of leniency is kept by the prosecution.

We have been referred to two cases which present a somewhat similar factual situation. In *Taylor v. Commonwealth*, 461 S.W.2d 920, 922 (Ky.App.1970), two jointly tried defendants signed confessions which were "part of a 'deal' in which certain felony charges [against each defendant pending in Indiana] were dismissed." As stated in the opinion, "The Commonwealth's attorney for McCracken County told the two men that the Indiana authorities would dismiss the Indiana charges if the two would make confessions satisfactory to him. They made and signed the confessions and the Indiana charges were dismissed." The two were then tried for murder and armed robbery and the confessions were admitted in evidence over the defendants' objection that the confessions were induced by a promise and therefore were involuntary. The Kentucky Court of Appeals held: "[T]he circumstances of the promise * * * were entirely compatible with the exercise by the appellants of a free volition in the giving of the confessions, and therefore the confessions were admissible. The evidence respecting the circumstances of the making of the confessions warranted the conclusion that the initial proposal for the 'deal' came from Taylor [one of the defendants], who feared personal harm at the hands of a former acquaintance, then confined in the Indiana penitentiary, if he were convicted on one or more of the Indiana charges and sentenced to the Indiana penitentiary; that both Taylor and Brown [the second defendant] were of the belief that they were in danger of conviction on the Indiana charges but could 'beat' the Kentucky charges; and that Brown obtained the advice of his counsel before agreeing to the confession deal." It was pointed out that in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), it was held that "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence," and in the *Taylor* case it was concluded: "We think it is obvious that the 'compelling influences' referred to are ones exerted by the *public authorities* in such a way as would be calculated to affect the accused's exercise of a free and voluntary choice of whether or not to confess. Here the promise was *solicited* by the accused, freely and voluntarily, so they cannot be heard to say that in accepting the promise they were the *victims* of compelling influences." We note that the United States Supreme Court denied certiorari in this case. *Brown v. Kentucky*, 404 U.S. 837, 92 S.Ct. 126, 30 L.Ed.2d 70 (1971).

*Pontow v. State*, supra, involved a situation where the defendant contended that his plea of guilty was made only because the trial court had improperly refused to suppress his confession which he claimed was involuntary because it was induced by assurances of the prosecuting attorney that he would be charged with only one of a possible eighteen offenses. Reliance was placed on the dictum statement in *Bram v. United States*, supra. The court pointed out that the defendant was not subjected to lengthy or harassing questioning, that he was experienced in the criminal process, and that he "initiated hard-headed, armslength bargaining with the police to attempt to gain favorable treatment." It was held that "a promise of leniency does not in itself evince involuntariness," but it is a factor to be considered by the court in making its determination whether under the totality of the circumstances the confession was voluntarily given, and that it would be inappropriate to lay down a rule

that forbids the prosecutor from discussing the disposition of charges with a defendant.

Another case deserves mention. In *State v. Cydzik*, 60 Wis.2d 683, 211 N.W.2d 421 (1973), we find this statement: "The sole issue then is whether the defendant's statements to the police were voluntarily made. The defendant claims that the voluntariness of his subsequent statements was eroded by the fact that Detective Conway told him his cooperation would be to his benefit. Such statement by a law enforcement officer falls far short of creating the 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' Even a promise of leniency would not, standing alone, do that. Whether such statements by the defendant are voluntary or the result of coercion depends upon the 'totality of the circumstances.' "

Appellant cites numerous cases in his brief, and five additional cases in an addendum. The two Missouri cases upon which he places his principal reliance are *State v. White*, 316 Mo. 576, 292 S.W. 411 (1927), and *State v. Williamson*, 339 Mo. 1038, 99 S.W.2d 76, 79 (1936).

■ In the *Williamson* case the court stated that for a confession to be inadmissible on the ground that it was involuntary it must be made to a person in authority in consequence of improper influences exerted by him, and it was further stated: "The promises made must be positive in their terms or clear in implication, but it is not necessary that they offer some particular and specific advantage or favor. If they leave the accused free to exercise his own judgment about confessing, or if, notwithstanding them, he does use his own independent judgment, the confession is voluntary." It was also stated that if the promises "suggest an advantage to be gained by the confession * * * and if they are reasonably sufficient to induce and do causally induce an expectation or hope of worldly benefit as against the pending charge, it is enough to bar the confession." We consider this to be equivalent to the rule that whether a statement is voluntary depends

on the totality of the circumstances, which is the generally accepted rule. The *White* case does not purport to lay down general rules, but the facts concerning the taking of a statement are reviewed and the court concluded that under those facts the statement was not a voluntary one. We note one distinguishing feature between these two cases and the one before us. In each case it was the prosecutor or sheriff, not the defendant, who initiated the discussion which led to the confession.

Appellant cites other cases in which a promise of leniency was coupled with the other conduct, not conducive to the free exercise of the choice to make a voluntary statement. In those cases the totality of the circumstances forced the conclusion that the statement was not voluntary. We do not consider them to be controlling when applied to the facts of this case.

Mention is required of a recent case by the Missouri Supreme Court. *State v. Hoopes*, 534 S.W.2d 26 (Mo. banc 1976), involved the use of a confession given as a part of an agreement that the accused plead guilty. But in that case the State did not keep its part of the agreement. Instead it tried the accused, and in the course of that trial offered the confession in evidence. The court reversed the judgment because of the improper use of the confession, and in the opinion we find this comment: "When statements are obtained from an accused upon promises of leniency in return for a plea of guilty and the plea of guilty is aborted, the admissions obtained pursuant to the agreement * * * should 'never have been heard of again.' " We consider this comment to be limited to the facts of that case, and not to be controlling of the factual situation of this case.

■ We have here a situation where the appellant initiated the negotiations for a plea of guilty. There was no improper questioning, no threats, no false promises, and no failure or refusal of the prosecution to carry out its part of the agreement. There is nothing to indicate that there was any improper conduct on the part of the prosecuting attorney or the sheriff which

brought about appellant's statement. Any rule to the effect that appellant's statement was not a free and voluntary expression on his part would ignore, for the sake of technical rules, the practicalities of the situation. When the totality of all the circumstances are considered, the trial court correctly ruled that the confession was voluntary and therefore admissible in evidence.

The judgment is affirmed.

SMITH, C. J., and NORWIN D. HOUSER, Special Judge, concur.