THE STATE v. WILSON WHITE, Appellant.—292 S. W. 411.

Division Two, January 24, 1927.

1. **EVIDENCE: Conspiracy: Prior Conversation by Robber with Others.** Statements made by Midkiff, as he went about town getting a gang of men together who later went to the house of Green, whom Midkiff there killed and robbed, to the effect that he was going to "get some easy money," which were not made to defendant, or in his presence and in no wise con-

nected him with knowledge of Midkiff's purpose or undertaking, are not admissible, although defendant later went along with Midkiff and others to whom the statements were made and was present when Green was killed and robbed.

2. **CONFESSION: To Officer: Involuntary.** A confession made to the prosecuting attorney and the sheriff, by a defendant while in jail, charged with others with murder, under a promise that, if he would, in the trial of his co-indictee, tell all he knew about the murder, the prosecuting attorney would recommend for him the minimum punishment of ten years' imprisonment, is not voluntary, and is inadmissible against defendant. The prosecuting attorney and the sheriff are persons in authority, and a confession, procured by a promise, made to a person in authority, is not voluntary, and is not admissible in evidence, and particularly so when defendant was very reluctant to confess, and did so only when he learned that another co-indictee had implicated him and he was then advised by his father and friends that the easiest way for him was to confess and take advantage of the prosecuting attorney's offer, and he was afraid to risk a trial with the evidence of the co-indictee against him.

---

Corpus Juris-Cyc. References: **Criminal Law**, 16 C. J., Section 1287, p. 648, n. 12; Section 1489, p. 726, n. 53; Section 1491, p. 727, n. 62. **Homicide**, 30 C. J., Section 421, p. 192, n. 42.

Appeal from Cape Girardeau Circuit Court.—*Hon. Frank Kelly,* Judge.

REVERSED AND REMANDED.

*Alexander & Coffer* for appellant.

*North T. Gentry,* Attorney-General, for respondent.

WHITE, J.—The defendant appeals from a judgment of the Circuit Court of Cape Girardeau County, rendered upon conviction of murder in the first degree. His punishment was assessed at life imprisonment in the penitentiary.

On the night of August 5, 1922, Frank Midkiff, Delbert Midkiff, Walter Houck, John Biddy and, the State claims, Wilson White murdered and robbed John Green, a negro, who lived a few miles from Jackson, Missouri.

On that evening Frank Midkiff was seen about the streets of Jackson. He had a conversation with John Green in which he said it was time for Green to go home; that he might meet up with bad luck. Soon after he attempted to gather a gang apparently for some unlawful purpose. He approached Myron Egger and asked Egger to go along with him and get some easy money. Egger asked him what he was going to do and he refused to say. He had a similar conversation with August Sanders, who said he was going to a show. Frank said: "Don't go to the show; stay with us, we are going to

316 Mo.—37.

get some easy money." Sanders asked, "What are you going to do, rob a bank?" Midkiff answered, "No." He had a similar conversation with Walter Houck. There were with him part of the time his brother, Delbert Midkiff, and John Biddy. Walter Houck joined him in the expedition; Sanders and Eggers declined to go. Biddy had a car and five men, according to Houck's testimony; Frank and Delbert Midkiff, John Biddy, Walter Houck, and the defendant, Wilson White, drove to John Green's home. Green was not there at the time and they waited for his return. Frank Midkiff and Biddy hid behind the house. Delbert, Houck and White, according to Houck, hid behind the smokehouse. Green presently appeared, and as he approached his door Frank Midkiff struck him in the head with a hammer—a blow which ended his life. Biddy then proceeded to take some money—more than two hundred dollars—off his person. It was later divided between the men. The facts as thus briefly stated more fully appear in the other cases that have come before this court. [State v. Delbert Midkiff, 286 S. W. 20; State v. Frank Midkiff, 278 S. W. 681.]

The Attorney-General in his brief makes this statement: "There is very little evidence, if any, to implicate the defendant in the murder of John Green except the testmony of Walter Houck, who turned State's evidence, and the defendant's own confession at the trial of Delbert Midkiff."

I. Objection was made and exception saved to the admission in evidence of the statements of Frank Midkiff as he went around in Jackson getting his gang together. The conversations mentioned above with Egger, Sanders and Houck, all were at a time when the defendant was not present. Frank Midkiff did not say what his purpose was. He was only going to "get some easy money." Assuming that those with whom he talked knew he invited them to join in some unlawful enterprise, there was nothing in the evidence to connect the defendant at that time with any knowledge of the expedition or with those conversations. Nobody had seen him associated with the other parties. There was some evidence that about the time Frank Midkiff spoke to John Green, advising him to go home, he also spoke to the defendant. The witness who related this said that the defendant was not near enough to hear the conversation between Frank Midkiff and Green. If he had been it would have meant nothing so far as his knowledge of Frank's purpose was concerned. Not a syllable of testimony was offered to show what Frank said to the defendant, or to show that his conversation was different from what he might have said to any other person passing along the street. It occurred before Frank had his conversations with the others about going to get

**Prior Conversations with Others.**

some easy money.  The first appearance of the defendant with the gang, according to the testimony of Houck, was when they got in Biddy's car to start for Green's home.  Assuming that a conspiracy was hatched while Frank Midkiff was gathering his crowd together, there is no evidence whatever that the defendant knew anything about it or was a party to it, until he got into the car later.  So evidence of those conversations and the acts of Frank Midkiff were incompetent and should have been excluded.

One Sherman Haupt was permitted to testify over the objection of the defendant, that he was in the hardware business and two white men came into his store on the evening of August 5, 1922, and asked to buy some shells.  He didn't know who the men were and could not identify them.  The defendant failed to save the exception to this evidence, but on a retrial it should not be admitted.

II.  The defendant made a confession and was introduced by the State as a witness in the Delbert Midkiff case.  That confession was admitted in evidence over the objection and exception of **Confession.** the defendant.  The defendant explained how he came to make that confession—that he was promised minimum punishment and told that Walter Houck had confessed.

The court took evidence before admitting the confession.  William Browning, the sheriff, offered by the State to show what occurred, said, in answer to the question of Mr. Hines, prosecuting attorney:

"You [meaning Mr. Hines] came over there and talked to John Biddy, Delbert Midkiff and Wilson White, and told them if they would go on and tell the truth about it you would recommend to the court the minimum punishment of ten years; neither one of them would accept it as you stated and then afterwards I met Addison up here and he wanted to talk to Wilson."  . . .

Afterwards Wilson was separated from the other two and this occurred, according to Browning:

"Then you made the statement to Wilson again that if he would come on and tell the truth you would recommend the minimum punishment . . . if he would tell the truth and tell all he knew about the case you would recommend the minimum punishment of ten years."

The prosecuting attorney, Mr. Hines, thus explained the conversation with the defendant:

"And I told him this: 'If you know about that murder, and will tell the truth about it, and tell all you know about it, and testify in this other case I am going to try here, I will recommend a ten-year sentence for you.'  And White said: 'Well, I will think about it.' Later White turned loose and told the whole story.  He was then used as a witness against Delbert Midkiff."

By all the authorities that confession was not voluntary. The defendant was in jail at the time and his interview was with the prosecuting attorney and the sheriff—persons in authority—and the law presumes that a confession thus induced is involuntary. [State v. Brown, 73 Mo. 631; Couley v. State, 12 Mo. 462; State v. Keller, 263 Mo. l. c. 557; 16 C. J. 726.]

In each of those cases cited the inducement was no stronger than that which appears in this case.

In the Couley case (l. c. 465) the officer who arrested the prisoner said: "I promised the defendant I would not appear against him in court if he would confess and tell me all about the act, as my object was to catch him." That was held to be sufficient inducement to make the confession not voluntary.

In the Brown case (l. c. 633) the officer arresting the prisoner said to him: "We know you are not at the head of this, and if you will tell all you know about it, it may be best for you, and may release you." That was held to be sufficient inducement to characterize it as not voluntary.

In the Keller case (l. c. 557) the detective said to the defendant: "I am satisfied you murdered your husband and your little girl, and the best thing for you to do is to tell the truth. You will feel better." In commenting upon that statement by the detective the court said: "If language like that used by Detective Arthur, had been used by the sheriff, the jailer, or the prosecuting attorney, or any others of those whom the books denominate 'persons in authority,' the confession here would be utterly inadmissible because not voluntary. The authorities practically all agree that a confession induced by a *person in authority* by the use of such words as, 'Tell the truth and it will be better for you,' renders the confession inadmissible." It was held in that case that the detective was a private one, and since the defendant was not in custody, the confession was admissible.

Corpus Juris, vol. 16, p. 727, says: "A distinction is made as to their voluntary character between confessions which are procured by a promise or other inducement made or offered by a person who is so related to accused as to be able to exercise power or authority over him and confessions in response to promises by persons having no authority over him." Decisions from many cases are cited showing that to be the universal rule.

It will be noted that Houck was the only witness who connected the defendant with the expedition and the crime. Houck testified on the promise of immunity. He admitted on cross-examination that he had previously denied any knowledge of the matter. In his testimony in the Delbert Midkiff case and his testimony before a grand jury he testified differently. Before the grand jury he said that August Sanders was with the party, instead of Wilson White. He

said he put Sanders in and left himself out, but he did not mention the defendant. Then he explained by saying that he had finally made up his mind to tell the truth about it and included Wilson White with the conspirators and murderers.

The evidence shows also that the defendant was very reluctant to confess. He did not do so until he learned that Houck had implicated him and he was then advised by his father and by his friends that the easiest way for him was to confess and take advantage of the prosecuting attorney's offer. He was afraid to risk a trial with the evidence of Houck against him.

For the errors noted the judgment is reversed and the cause remanded. All concur.