Vance W. HEIDEMAN, Appellant,

v.

UNITED STATES of America.

Stanley V. KESSEL, Appellant,

v.

UNITED STATES of America.

George H. BRYANT, Appellant,

v.

UNITED STATES of America.

Nos. 16395, 16402, 16408.

United States Court of Appeals
Eighth Circuit.

Aug. 10, 1960.

Vance W. Heideman, pro se.

Stanley V. Kessel, pro se.

George H. Bryant, pro se.

Robert Vogel, U. S. Atty., Gordon Thompson, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

On December 16, 1958 appellants Stanley V. Kessel and Vance W. Heideman were sentenced to twenty years imprisonment and at the same time appellant George Harding Bryant was sentenced to twenty-five years upon their pleas of guilty to an indictment against them in six counts for interstate transportation with unlawful and fraudulent intent of six forged money orders in one hundred dollar denomination in violation of 18 U.S.C. § 2314. The money orders were never negotiated.

Kessel and Heideman were each sentenced to four years on each of five counts to run consecutively and Bryant to five years on each of the five counts to run consecutively. In addition, all were sentenced on the sixth count and put on probation to commence after the conclusion of service on the fifth count. They are serving the sentences.

They applied to the sentencing court to vacate the sentences by petitions treated as motions to vacate under 28 U.S.C. § 2255 alleging in substance among other things that their pleas of guilty were not entered voluntarily by them but were wrongfully brought about in part by menacing expressions in their presence by the assistant district attorney in charge of their case and in part by deceptive inducement held out to them by him, in that: After defendants had pleaded not guilty and had been brought into court for the purpose of giving their consent to be tried at Fargo the assistant attorney declared in regard to them in their hearing that "there would be no deals" and that "he intended asking for the maximum prescribed by law." That maximum as to each of the defendants was sixty years imprisonment and sixty thousand dollars fine.

That thereafter a conference was held between the prosecutor and defendants' attorney reported to defendants in which the prosecutor indicated his view that a jury would surely find them guilty but he said that if defendants would change their plea to guilty he would recommend a five year term for each defendant and

the Court would accept such recommendation. When the defendants were brought into court for the purpose of changing their pleas it is claimed that the prosecuting attorney confirmed to them his offer and statements made to their attorney. Also that he added: "You will be saving yourselves a lot of trouble and us too if you do change your plea."

Although the Court recognized the petitions as motions under § 2255 they were denied without a hearing on the ground of conclusive showing in the motions, files, and records, that the prisoners were entitled to no relief. Their contention on this appeal is that their pleas of guilty were obtained from them unfairly and were not voluntary and should be vacated.

The record before us includes the steps by which the defendants were arrested by state police in Minnesota and brought to North Dakota and subjected to series of questionings by agents of the Federal Bureau of Investigation both before and after indictment but it does not appear that the District Court interrogated any of them as to the reason for their change of plea or made inquiry of them as to whether it was voluntary and free from coercion or induced by assurance concerning the penalty.

■ It may be that the crime of transporting false or forged securities with unlawful and fraudulent intent across state lines will be committed under such circumstances as to justify the extreme penalty of the statute but the record here does not suggest such a situation. The securities were six so-called "Universal Money Orders" calling for only a hundred dollars each, and all of them were carried across the line in one transaction. The act was probably more than a petty misdemeanor but it was not a heinous crime like murder, rape, or arson, nor could it fairly be thought to merit the same kind of penalty.

Yet, according to the allegations of the motions, the prosecuting attorney de-

**808**

clared his intention of treating the offense as one meriting the extreme penalty of the law that is only applied in modern times to most atrocious crimes, i. e., sixty years, split into consecutive terms, amounting to life imprisonment and making his recommendation accordingly. Also, according to the allegations, he declared that his recommendations would prevail.

On the other hand it was alleged that on the eve of the trial there came from him the offer of the five year sentence for the guilty pleas and the inducement of saving trouble if the plea was forthcoming and the assurance that the recommendation of the prosecution would prevail.

The motions on the whole present facts from which, if substantiated, it can be fairly inferred that pressure by threat and enticement were improperly brought to bear upon the defendants and their pleas were not voluntary. Section 2255 requires that a hearing be held unless the files and records in the case conclusively show that the petition is without merit. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579.

■ In Kercheval v. United States, 274 U.S. 220, 223–224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, the Court said: "A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads, he may be held bound. * * * But, on timely application the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence."

■ The gravity of the effect of a plea of guilty requires a commensurate thoroughness in the inspection of the circumstances surrounding the entering of that plea and of the motivating factors for it. Such an inquiry does not have for its object the ascertainment of the petitioner's guilt or innocence, but is limited in its scope to the voluntariness of the plea. Friedman v. United States, 8 Cir., 1952, 200 F.2d 690.

■■ A plea of guilty is not voluntary simply because it is the product of sentient choice. "Conduct under duress involves a choice * * * and conduct devoid of physical pressure but not leaving a free choice is a product of duress as much so as choice reflecting physical constraint." Frankfurter, J., concurring in Haley v. State of Ohio, 332 U.S. 596, 606–607, 68 S.Ct. 302, 307, 92 L.Ed. 224. Assuming, as we must for the purpose of this appeal, that the allegations in the petition are true, then the statements of the assistant United States attorney that there would be "no deals"—that he intended to try to get the maximum sentence (life imprisonment and heavy fines) must be construed as gross exaggeration of the offense and a fearful threat to the defendants. When he later offered to "recommend" a sentence of five years there was the contrast with the life imprisonment alternative. Taken with the stated certainty of conviction in the event of trial, there was a question as to whether the pleas were voluntary upon which a hearing should be granted.

In Euziere v. United States, 10 Cir., 1957, 249 F.2d 293, 295 the defendant and another were indicted in six counts for traffic in narcotics. The judge told them that if they put the government to the expense of a trial he would impose the maximum sentence. They thereupon entered a plea of guilty to two counts, and the other four were dismissed. They were sentenced to 10 years on each of the remaining counts, to be served, as here, consecutively. The defendant filed an application under section 2255 and the Trial Court denied it without a hearing.

In reversing, the Court of Appeals said that "a plea of guilty interposed as a result of coercion is not consistent with due process and therefore a judgment and sentence imposed pursuant to such a plea cannot stand." The court there influenced the plea. Such is not the claim in this proceeding, but the prosecuting attorney in charge of a case also has grave responsibilities toward defendants. Again, in Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302, the Supreme Court reversed a denial of a hearing under section 2255 where the claim was that a plea of guilty to kidnapping was coerced by statements of an FBI agent that he would manufacture evidence of harm done to the victim in order to get the government to impose the death penalty. Similarly, in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, the Supreme Court ordered a hearing to determine the truth of the petitioner's claim that her plea of guilty to a charge brought under the Espionage Act of 1917 was influenced by the advice of an FBI agent who was a lawyer that she could and would be found guilty of the crime although she had no direct participation in it. And in Behrens v. Hironimus, 166 F.2d 245, 247 where the defendant pleaded guilty to a violation of the Espionage Act and was sentenced to 20 years, the Court of Appeals for the 4th Circuit remanded a hearing under 2255 of her claim that her plea had been coerced by law enforcement agents' statements that saving the government a long trial would avail her of leniency and threats to get her the maximum if she declined, saying, "An accused who has been convicted on a plea of guilty induced by threats, promises and intimidation on the part of law enforcement agents, has been deprived of constitutional rights to the same extent as a person who has been convicted upon a confession obtained through coercion."

An analogy can be drawn to those cases considering the voluntariness of confessions (as, indeed, the original juridical meaning of the term "confession" meant a plea of guilty, see Hale, Pleas of the Crown, Emlyn's Ed., p. 225). In State v. White, 316 Mo. 576, 292 S.W. 411, 412 a confession induced by the prosecutor's statement to the defendant that "I will recommend a ten-year sentence for you" was excluded as being coerced. In State v. Mullin, 1957, 249 Iowa 10, 85 N.W.2d 598 a conviction based on a confession was reversed where that confession was induced by statements of the police officers that such a confession would procure more mercy by the prosecuting authorities. And in State v. Crittenden, 1948, 214 La. 81, 36 So.2d 645, 646 the statements by the officers that "My line of questioning had to do with telling him [the defendant] that it would be made lighter on him if he told the truth" was a factor considered by the Court in excluding a confession.

We do not hold, as the Court of Appeals did in the Euziere case, that as a matter of law the defendants were coerced. We hold that under the peculiar circumstances of this case the order of the Trial Court denying the motion without a hearing was error, and that the allegations of the motion, if true, form a basis for relief. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232; Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579; United States v. Morin, 3 Cir., 265 F.2d 241.

The petitioners also contend that because the six securities the transportation of which is the corpus of the offense were all carried in one automobile on one trip at one time, multiple convictions are not authorized by the statute defining the crime and setting the punishment. 18 U.S.C. § 2314. However, we have held that each security so transported constitutes a permissible unit of prosecution (Carlson v. United States, 8 Cir., 1960, 274 F.2d 694; see also United States v. Taylor, 2 Cir., 210 F.2d 110.) and the petitioners' contention in this regard may not be sustained. But the use of multiple counts in a case like the present should not cause the actual de-

gree of criminality in the act charged to be exaggerated and magnified beyond reason. We are reminded of the admonition in Barnes v. United States, 8 Cir., 1952, 197 F.2d 271 that consecutive sentences related to multiplied counts not infrequently invite belated collateral attacks while general or concurrent sentences present less temptation in that regard and are ordinarily equally effective.

Reversed and remanded for proceedings not inconsistent herewith.

VOGEL, Circuit Judge (dissenting).

While I agree with the language of the majority opinion relating to the severity of the sentences imposed upon the defendants, I cannot concur in its conclusion that the defendants are entitled to a hearing to determine whether their pleas of guilty were coerced.

The motions presently before this court on appeal raise solely the issue of whether or not the multiple counts of the indictment constituted but a single offense. On the resolution of this issue I am in complete agreement with the majority. The only claim of coercion in the entire record is that made by the defendant Kessel alone in a *previous* motion brought under § 2255, 28 U.S.C.A., which motion was denied by the District Court without a hearing and from which denial no appeal was taken. Bryant (Kessel) et al. v. United States, D.C.N. D.1959, 173 F.Supp. 574, 581. If Kessel could possibly be deemed to make a similar contention in the instant petition, such assertion falls within the "second or successive motion" limitation of § 2255. As to the defendants Bryant and Heideman, granting them a hearing on whether or not their pleas were voluntary violates the rule that no contention may be the basis for a motion to vacate which has not first been filed in and presented to the trial court. See, e. g., Johnston v. United States, 8 Cir., 1958, 254 F.2d 239, 241. I accordingly believe that the District Court should be sustained.