Robert Donald CUMMINGS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19094.

United States Court of Appeals
Eighth Circuit.

July 24, 1968.

Gray Carroll Stirbling, Jr., St. Louis, Mo., for appellant.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Veryl L. Riddle, U. S. Atty., St. Louis, Mo., on the brief.

Before VAN OOSTERHOUT, Chief Judge, HEANEY, Circuit Judge and REGISTER, Chief District Judge.

HEANEY, Circuit Judge.

The defendant and his wife were convicted of uttering and publishing a United States Savings Bond [1] in violation of Title 18 U.S.C. § 495. The defendant was sentenced to three years. His wife was given a suspended sentence. Both testified in their own behalf, their defense being that the owner of the bond had authorized Mrs. Cummings to cash it and other bonds, and to open an account from the proceeds in the name of the owner and the defendant. The defendant urges that the District Court erred: (1) in refusing to grant a continuance, (2) in overruling the defendant's motion for judgment of acquittal on the grounds that there was not sufficient evidence for conviction, (3) in receiving admissions made by the defendant to Secret Service Agent Allen, and (4) in instructing the jury.

(1) *Motions for a continuance.*

We initially consider whether the court erred in refusing to grant the defendant's pretrial motion for a continuance. This motion was filed with the court on the morning that the trial was scheduled to commence without advance notice to the government. It stated that the trial had been set on July 3rd, twenty-one days earlier. It alleged that the defendants had not had time to adequately confer with their attorney and to advise him regarding their defense, and that the defense counsel had not had adequate time to prepare the case for trial, particularly in the light of other civil and criminal matters that he was handling. The government resisted the motion on the grounds that its witnesses were present and ready for trial. The court overruled the defendant's motion and indicated that he had given consideration to counsel's other commitments in so doing.[2]

---

1. While the indictment only charged the defendants with uttering one bond, in fact they cashed an additional fifty-three similar bonds.

2. The following colloquy took place between the court and counsel for the defendant with reference to the continuance:

 "THE COURT: Mr. Hollingsworth, for the benefit of the record and so that there is no misunderstanding about it, I had several conversations with you last week about this case being ready for trial.

 "MR. HOLLINGSWORTH: Yes, sir, that is correct.

 "THE COURT: And you stated then when it looked like we couldn't try the case today that you would be ready on Saturday, the 29th.

 "MR. HOLLINGSWORTH: That is correct.

 "THE COURT: You advised me that you had a case in Kansas City for trial

During the course of the trial, the motion to continue was renewed under the following circumstances: Counsel for the defendant, in cross-examining an officer of the Crestwood Bank, asked whether or not the bank had checked to determine whether the defendant's wife had similarly cashed other bonds for the owner on earlier occasions. When the officer answered in the negative, the defendant asked the court to issue a subpoena *duces tecum* for the information and to continue the trial when the information was produced. The defendant offered to prove that Mrs. Cummings had, in fact, cashed "E" Bonds for the owner at the Crestwood Bank using the same technique as in the instant case. The court stated that the defendant had an ample opportunity before trial to obtain the information by subpoenas if he wanted it. He added that when examination of the witness had been completed, a determination would be made as to how long it would take the bank to produce the information and that the bank would be required to produce the information if it were available. The officer of the bank subsequently stated that it would take a couple of days to determine whether or not other bonds had been cashed in the month of March, 1967, particularly without knowing the dates of such other transactions. No further requests were made by the defendant.

■ It is a well settled rule that a motion for a continuance is left to the sound discretion of the court, the exercise of which will not ordinarily be reviewed. Hemphill v. United States, 392 F.2d 45 (8th Cir. 1968); Stamps v. United States, 387 F.2d 993 (8th Cir. 1967).

■ We find no abuse of discretion here. Counsel for the defense was advised almost a month before trial that the case would be heard on July 24th.

which would take the rest of the week through Friday.
"MR. HOLLINGSWORTH: Yes, sir.
"THE COURT: It is obvious to the Court if you had been ready to try it

He later advised the court that he would be ready for trial on July 29th, as he had a case to try in another court during the week of the 24th. When this trial was not held, the trial court was well within its discretion in insisting that the originally scheduled date be kept.

■ The trial court also properly denied the request for a continuance made during the course of the trial. While the testimony that the defense counsel desired to introduce was material to the defense offered by the Cummings', the reason advanced for not subpoenaing this information before trial was the fact that the defense counsel anticipated that the bank would have records of prior transactions by the Cummings' for Mrs. Bieze available in court. While this may or may not have been a reasonable expectation, the fact is that the bank denied knowledge of any earlier transactions and there is no showing that the government had knowledge of any. See, United States ex rel. Rizzi v. Follette, 367 F.2d 559, 561 (2d Cir. 1966). Accord, Thomas v. United States, 343 F.2d 49 (9th Cir. 1965); United States v. Zborowski, 271 F.2d 661, 668 (2d Cir. 1959). See generally, Jones v. United States, 358 F.2d 383 (8th Cir. 1966).

The reason advanced by the defendant for failing to subpoena the records loses some of its plausibility when it is noted that Mrs. Cummings testified that she had cashed bonds for the owner at other banks on at least three occasions and returned the money to the owner, but failed to support this testimony by subpoenaing the records of the other banks or calling their officers as witnesses.

Under such circumstances, we believe the trial court properly denied the motion for a continuance.

on the 29th, which is Saturday, you would have been ready today. * * *
"MR. HOLLINGSWORTH: Thank you, Judge. * * *"

*(2) The sufficiency of the evidence.*

██ We have carefully reviewed the record and believe that it supports the jury verdict. It is clear that Mrs. Cummings forged the owner's signature on the bonds and caused them to be cashed at the Crestwood Bank. It is equally clear that he drove his wife to the shopping center where the bank was located; that he signed a signature card permitting him to draw on the joint account opened with funds obtained from the sale of the bonds; that he cashed four checks on the account for $454.13 and used the money for his personal purposes; and that he attempted to persuade the employees of the bank not to contact the owner of the bonds when the bank became suspicious of the circumstances under which they were cashed. In our view, these circumstances warranted a jury finding that "the defendant knowingly and willfully associated himself with his wife in the venture and aided in some way its commission," [3] and that he was thus guilty as a principal. E. g., Greenberg v. United States, 297 F. 45 (8th Cir. 1924); Melling v. United States, 25 F.2d 92, 93 (7th Cir. 1928). Cf., United States v. Chappell, 353 F.2d 83 (4th Cir. 1965). We add that the defendant's attempted concealment of material facts is evidence of guilt. Ashcraft v. State of Tennessee, 327 U.S. 274, 66 S.Ct. 544, 90 L.Ed. 667 (1946). Accord, United States v. Howard, 228 F.Supp. 939 (Neb. 1964).

The defendant argues that his withdrawal of funds and his attempt to persuade the bank not to investigate the circumstances under which the joint account was opened occurred after his wife had uttered the bonds and were thus inadmissible. He further argues that if admissible, they should be given very little, if any, weight.

 No objection was made to the introduction of this testimony. Thus, unless it was plain error or for the lower court to receive it, it need not be reviewed by us. Fed.R.Crim.P. 52(b); Johnson v. United States, 362 F.2d 43 (8th Cir. 1966); Lucas v. United States, 343 F.2d 1 (8th Cir.), cert. denied, 382 U.S. 862, 86 S.Ct. 125, 15 L.Ed.2d 100 (1965). We find no error, plain or otherwise. The evidence was properly received, and is entitled to weight. While the subsequent acts were not elements of the offense charged, they were admissible as bearing upon the purpose and intent of the defendant. Neff v. United States, 105 F.2d 688 (8th Cir. 1939).

*(3) Admissions to the Secret Service.*

The defendant's guilt is further demonstrated if his statement to Secret Service Agent Allen, that he was with his wife in the bank and saw her endorse the bond, was properly received. We believe it was.

The circumstances surrounding the taking of the statement were developed by the testimony of Allen, who was called as a government witness. The defendant objected at the outset to Allen's testifying. (The grounds for the objection do not appear in the record.) The trial court then took Allen's testimony outside of the presence of the jury. It gave the defendant a similar opportunity, but he declined.

Allen testified that the defendant, a forty-five year old business man, was taken into custody at his place of business, that he was advised of his "Miranda" rights and then driven to the Secret Service Headquarters, where the warnings were repeated, that the defendant stated that he understood his rights, that he was unwilling to sign a written waiver because he had earlier spoken to an attorney who advised him not to sign anything, but that he was willing to answer questions put to him by Allen, that the defendant was asked if he wanted to call his attorney and that he answered in the negative. Allen further testified that the defendant told him that he drove his wife to the bank and was present in the bank with her when she

3. See page 11, infra.

cashed the bonds; that he signed the signature card and drew some money from the joint account; and that the money had not been used for his personal purposes.

At the conclusion of Allen's testimony, the trial court ruled that any statements made by the defendant to Allen were made after the defendant was fully advised as to all of his constitutional rights and, accordingly, such statements that the defendant "made may be admitted in evidence." The following colloquy then took place:

"MR. HOLLINGSWORTH: May my exceptions, Your Honor, show without particularizing those exceptions?

"MR. NEWTON: May I ask Your Honor is he going to discuss this thing in the presence of the jury?

"THE COURT: I don't think it is necessary unless you want to.

"MR. HOLLINGSWORTH: In the interest of brevity—

"MR. NEWTON: The Court has made a statement already.

"MR. HOLLINGSWORTH: Then I just object."

On appeal, the defendant concedes that he was given a full "Miranda" warning, but contends, nonetheless, that the statement that he gave was an involuntary one as: (1) his wife, who made no admissions, was being examined in the next room, that he could see and hear her and that she was crying; and (2) that Allen had stated that whatever he said or failed to say would be reported to the United States District Attorney.

■ While the record is vague, the parties concede that the issue of the voluntariness of the defendant's admissions were raised before and decided by the trial court. We thus reach the merits of this issue. In so doing, we note that the trial court did not submit the issue to the jury, a course of action heretofore recognized as being within the discretion of the trial court. Tucker v. United States, 375 F.2d 363, 367–368 (8th Cir.), cert. denied, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967).

The defendant's contention that his admissions were coerced is belied by his testimony. At the close of it, he stated that it was, with one exception, basically the same as the statement he had given to Allen. (The exception being that he admitted being present in the bank and seeing his wife endorse the bonds in his pretrial statement and denied the same in trial testimony.) He added that he was pretty shook up at the time he was being questioned by Allen. On cross-examination, he stated: " * * * [T]he Secret Service Agent, I will say was very, very nice and polite and very good. * * * [H]e may have misunderstood me [as] * * * I never saw my wife sign any bonds." He then went on to testify:

"Q. But he didn't make any promise or put any pressure on you to make the statements, did he?

"A. No, I can't say promise or pressure. There was worded—regardless of how I answered he was going to inform his boss, if I remember right. Now my memory wouldn't be the best of that. He was going to inform his boss, or someone, exactly what I answered.

"Q. That is all that was said?

"A. Sir?

"Q. He didn't say anything else about making any promises to you, or anything?

"A. No, sir."

■ The standard to be applied by this Court in determining whether a confession is incompetent because not voluntary "is controlled by that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'" Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). "Under this test, the constitutional inquiry is not whether the con-

duct of * * * officers in obtaining the confession was shocking, but whether the confession was 'free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." Malloy v. Hogan, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964).

■ Whether we apply the test that voluntariness must be established beyond a reasonable doubt, Mullins v. United States, 382 F.2d 258 (4th Cir. 1967); United States v. Taylor, 374 F. 2d 753 (7th Cir. 1967) (semble); United States v. Inman, 352 F.2d 954 (4th Cir. 1965), or the test that an admission must be established to the satisfaction of the court as a voluntary one, Clifton v. United States, 125 U.S.App. D.C. 257, 371 F.2d 354 (1966), cert. denied, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967), we reach the conclusion that the admissions were the voluntary act of a forty-five year old business man. Compare, Pea v. United States, D.C.Cir., 397 F.2d 627 (rehearing en banc granted). Compare also, Johnson v. Commonwealth of Massachusetts, 390 U.S. 511, 88 S.Ct. 1155, 20 L.Ed.2d 69 (1968).

(4) *The court's instructions.*

The defendant objects to the court's instruction in two respects. First, it is argued that the court read the first two clauses of 18 U.S.C. § 495 to the jury, while the indictment charged only a violation of the second clause. The statute in question provides:

"§ 495. *Contracts, deeds, and powers of attorney*

"Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

"Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or"

The defendant contends that by reading both clauses, the court, in effect, submitted an additional charge not contained in the indictment, thus creating a fatal variance. E. g., Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L. Ed.2d 252 (1960); United States v. Pepe, 198 F.Supp. 226 (D.C.Del.1961).

■ We disagree that the instruction had the effect of or was reasonably understood by the jury as submitting an additional charge to the jury. The second clause read alone would have been meaningless since it refers back to the first clause to give meaning to the words "*such* false * * * writing [Emphasis added.]." In addition, we note that the defendant did not object to the jury charge. Compare, Stirone v. United States, supra.

■ Secondly, the defendant complains that the District Court did not outline to the jury that he denied any prior knowledge of his wife's activities. Initially, we note that such an instruction was not requested. Failure to request an instruction will bar appellate review unless the failure to instruct is plain error. E. g., Cave v. United States, 159 F.2d 464 (8th Cir.), cert. denied, 331 U.S. 847, 67 S.Ct. 1732, 91 L. Ed. 1856 (1947). No plain error can be claimed in view of the following instruction:

"If you find and believe from the evidence beyond a reasonable doubt that the defendant Robert Cummings knowingly and willfully associated himself with Helen Cummings in this venture and aided in some way in its commission, then you may find Robert Cummings guilty of the charge in the indictment."

Affirmed.