Bert Leroy HUNTER, Appellant,

v.

Harold R. SWENSON, Warden, Appellee.

No. 20601.

United States Court of Appeals,
Eighth Circuit.

April 26, 1971.

As Amended on Denial of Rehearing
May 21, 1971.

Stephenson, Chief District Judge, dissented and filed an opinion.

Bert Leroy Hunter, filed brief pro se.

John C. Danforth, Atty. Gen., and Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., filed brief for appellee.

Before VOGEL and ROSS, Circuit Judges, and STEPHENSON, Chief District Judge.

ROSS, Circuit Judge.

Hunter brought this action for a writ of habeas corpus against Swenson, the

warden of the Missouri State Penitentiary. The trial court entered an order denying the petition and refusing to grant an evidentiary hearing. We reverse with directions to the trial court to hold an evidentiary hearing.

Hunter was charged with first degree murder in an amended information filed in the Circuit Court of Andrew County, Missouri on March 10, 1969. He pleaded not guilty and was convicted after a trial to a jury on May 1, 1969. After his motion for new trial was overruled, he was sentenced to life imprisonment. On appeal, the Missouri Supreme Court affirmed the conviction. State v. Hunter, 456 S.W.2d 314 (Mo.1969).

At Hunter's trial there was no direct evidence linking him to the killing except his confession. The only issue briefed and argued before the Supreme Court of Missouri was the admissibility of the confession. At his trial and on appeal, Hunter claimed that it was not voluntary in that it was induced by repeated and protracted custodial interrogation without counsel and by false promises of the police that he would receive help and a reduced charge for his cooperation. Hunter also claimed the confession should not have been received in evidence because his constitutional right to counsel was not knowingly and intelligently waived.

The murder occurred on June 16, 1968. On June 18, 1968, Hunter was interrogated by Sgt. Rhoades of the Missouri Highway Patrol and released. He was again interrogated later the same day by Sgt. Rhoades and Sgt. Shirley, by the prosecutor, Mr. Lance, and by other law enforcement officials. He was interrogated further on June 19 or 20 by Sgt. Shirley. On July 15, Hunter was again questioned while in custody of the police in Atchison, Kansas by Sgt. Shirley and another trooper. The interrogation was continued on July 16 and at that time there was some discussion initiated by Hunter about making a deal for a lesser charge and getting the Kansas charges dropped in return for Hunter's cooperation. Sgt. Shirley agreed to convey this suggestion to Mr. Lance, the prosecutor. He also told Hunter that another individual made a partial statement about the murder implicating Hunter. Hunter made oral statements at the time indicating some knowledge of the murder but denied having been at the murder scene and declined to make a written statement.

On August 5, 1968, Sgt. Shirley and Sgt. Rhoades, together with a court reporter, Mrs. Sowards, visited Hunter in jail in Atchison, Kansas. This contact was the result of a message to Sgt. Shirley from a friend of Hunter conveying Hunter's request to talk to Sgt. Shirley again. At that time, Hunter gave a confession to Sgt. Shirley and Sgt. Rhoades which was transcribed by Mrs. Sowards and signed and initialed by Hunter. Prior to signing the confession, Hunter was formally advised of his rights by Sgt. Rhoades from a card which he carried with the standard questions and warnings printed thereon.

These facts are not seriously in dispute. The disputed point is whether or not on August 5, 1968, immediately prior to the confession of Hunter, Sgt. Shirley promised or implied that the prosecutor, Mr. Lance, was willing to consider a reduced charge in return for Hunter's cooperation in the form of the signed confession.

The Supreme Court of Missouri commented on that question as follows:

"There is the further significant fact, which we find from the evidence, that there was no discussion of the so-called 'deal' on the 5th of August when Hunter was finally ready to give his confession. If in fact there had been such an understanding Hunter, who in his testimony showed that he knew there was such a thing as a written guarantee of immunity, would doubtless have insisted upon at least an oral confirmation of the deal before signing away his rights and confessing his crime."

State v. Hunter, *supra*, 456 S.W.2d at 321.

The United States District Court in its order denying the writ of habeas corpus made a similar finding.[1]

Prior to Hunter's original trial, his attorney filed a motion to suppress the confession. The state trial court (Judge Yeaman) on March 11, 1969 held a hearing on that motion at which hearing Hunter, Sgt. Shirley, and Sgt. Rhoades testified. The motion to suppress was overruled.

At the trial of the murder case in state circuit court, the Court (Judge Schoenlaub) held a hearing on the voluntariness of the confession outside the hearing of the jury. During this hearing Hunter and Mrs. Sowards testified, and Sgt. Shirley's testimony given at the hearing on the motion to suppress was received in evidence by stipulation of the parties. Sgt. Rhoades did not testify at this hearing and his earlier testimony was not received in evidence at this time.

After the Court had determined that the confession was voluntary and could be received in evidence, the jury returned and the trial continued.[2]

Sgt. Shirley then testified concerning the circumstances surrounding the confession. Mrs. Sowards also testified to the effect that on August 5, 1968 she

---

1. "On August 5, before making his statement, Hunter, after being explained his rights, signed a waiver of those rights, which included the statement, 'No promises or threats have been made to me and no pressure of any kind has been used against me.' *Sgts. Shirley and Rhodes* [sic] *and Mrs. Sowards, the stenographer, testified that no discussion took place on this date about a deal.*" (emphasis supplied)
In the same opinion, the United States District Court stated:
"There was no definite promise to Hunter, only a statement that a lesser charge might be considered. Hunter did not immediately act upon that statement. In fact, it was almost three weeks later before he made any incriminating statements. At the time he did make a confession, there was no discussion of a 'deal'."

2. In ruling on the admissibility of the confession the state trial court made the following observation:
"I am concerned about the testimony of Sergeant Shirley that was found on page twenty-seven of the March 11 transcript. The legal effect of those words is a matter that will have to be determined by an appellate court, if this matter is appealed. Also, I do have considerable doubt because of that one point. I am going to overrule the objections."
The testimony of Sgt. Shirley (on pages 26, 27 and 28 of the March 11, 1969 transcript) which concerned the court is as follows:
"Q. And you testified that Hunter asked to relay a message to Mr. Lance concerning a reduced charge? You testified to that? A. Yes.
Q. Did you relay that? A. Yes, I did.
Q. In return did you relay a message back to Mr. Hunter?
A. The only message I ever relayed back to Mr. Hunter was Mr. Lance informed me—I must qualify this—Mr. Hunter also requested Mr. Lance contact him personally at the jail. This information was relayed to Mr. Lance. But I didn't relay any information back to him, other than I told him that Mr. Lance told me that when Mr. Lance was satisfied he would cooperate and give a truthful statement, at that time he would consider coming to Atchison.
Q. Well, when you relayed the information back to Mr. Lance concerning the reduced charge—You did relay that information you said to Mr. Lance?
A. Yes, I did sir.
Q. After talking to Mr. Lance didn't you go back down and talk to Mr. Hunter and tell him what Mr. Lance had told you to say? A. Yes. I just repeated what he told me to say.
Q. Didn't Mr. Lance tell you to say that if he would cooperate it's possible, very possible that they would consider a lesser charge?
A. That's right.
Q. Then you told Mr. Hunter that?
A. I said 'it's possible'.
Q. You said it's possible, it's possible that Mr. Lance would consider a lesser charge if he would cooperate? You relayed that message to Mr. Hunter?
A. I did.
Q. Those were words spoken by Mr. Lance that you relayed to Mr. Hunter in the Atchison County Jail?
A. Right.
Q. Prior to the time of the statement?
A. Yes, sir."

was not in the interrogation room at all times, but she did not hear either Sgt. Rhoades or Sgt. Shirley make any promise or convey .any message from the prosecuting attorney, Mr. Lance, to Hunter relating to possible reduction of the charges. Again Sgt. Rhoades did not testify and his testimony from the hearing on the motion to suppress was not received in evidence.

The testimony of Sgt. Rhoades which was not presented except at the March 11, 1969 hearing on the motion to suppress was significant in two ways: First, Sgt. Rhoades testified he had not been present when Sgt. Shirley interrogated Hunter on July 15 and 16, so it is obvious that if he heard any communication from Sgt. Shirley to Hunter pur-

porting to convey a message from the prosecutor, it had to be on August 5, 1968. Secondly, his testimony is clear that on August 5, 1968 he overheard Sgt. Shirley tell Hunter immediately prior to obtaining Hunter's confession something "similar to 'Mr. Lance said it's possible.' " Rhoades also testified that he thought Sgt. Shirley meant by this that "[i]f Bert Hunter were to give a statement where he would be testifying against Carl Paxton as to Mr. Lyle's death, then there might be some leniency shown to Bert Hunter by the prosecuting attorney." [3]

A study of the transcript of the testimony at the March 11, 1969 hearing and the testimony at the trial convinces this Court that the conclusions reached by

---

3. The testimony of Sgt. Rhoades (on pages 36, 39–41 of the March 11, 1969 transcript) includes the following:

"Q. Sgt. Rhoades, more specifically, did you ever talk to Mr. Hunter at the Atchison County Jail in Kansas?
A. Oh, yes. Pardon me. On August 5.
Q. How about prior to August 5th, had you accompanied Sgt. Shirley down there on any prior trips that he had made to Atchison to talk to Mr. Hunter?
A. No.

\* ' \* \* \* \*

Q. Sgt. Shirley, in the course of your direct testimony where you were being questioned about whether any promises of leniency had been made to Mr. Hunter, you made reference to 'its [sic] possible', and that's where you left off, would you explain that for me please?
A. All I'm aware of, Sgt. Shirley, Mrs. Sowards and myself and Bert Hunter were in the room in the Atchison County—Pardon me, the Sheriff's Office in Atchison, Kansas, and Sgt. Shirley made a statement similar to 'Mr. Lance said its [sic] possible'. Now, this is all I know of.
Q. Do you know what he was referring to at that time, what Sgt. Shirley was referring to?
A. No, sir.
Q. You don't know what prompted that statement from Sgt. Shirley to Mr. Hunter?
A. Well, can I say what I think prompted it? I don't know. I don't know what prompted it.
Q. I'm asking you if you know what prompted it?

A. No, actually not.
Q. Did you know what Sgt. Shirley was talking about?
A. I thought I did, yes.
Q. Tell me what you thought he was talking about.
A. Well, if Bert would give—If Bert Hunter were to give a statement where he would be testifying against Carl Paxton as to Mr. Lyle's death, then there might be some leniency shown to Bert Hunter by the Prosecuting Attorney. This was what Bert Hunter wanted you might say, leniency if he were to testify.
Q. This was your understanding and your impression then from that conversation, or from that statement by Sgt. Shirley to Mr. Hunter?
A. That this was a message, 'its [sic] possible'.
Q. A message from whom Sgt. Rhoades?
A. Well, see I don't know. Sergeant Shirley was telling Bert 'its [sic] possible'. Do you mean do I know who it was from?
Q. Yes? A. No, sir.
Q. Did Sgt. Shirley say he was relaying it from anyone?
A. Well, Sgt. Shirley—As I recall, I would have thought it was a relay from Mr. Lance on this.
Q. To Mr. Hunter? A. Yes, sir.
Q. Sgt. Rhoades, this conversation, was it before or after Mr. Hunter signed the waiver, I believe which has been marked Exhibit Number 1? Yes, State's Exhibit 1.
A. I would say that was prior to this statement."

the Supreme Court of Missouri on the appeal and by the United States District Court in this habeas corpus proceedings were based, at least in part, upon an incorrect determination that the interrogation of Hunter on August 5, 1968 prior to his confession, did not include any discussion of a possible "deal" on the requested reduction of the charge to be filed. Whether a correct determination of this fact would have changed the decision reached by either court is not known, but Hunter claims that he is entitled to have this decision made on the basis of a correct factual determination after careful scrutiny of the state court record as a whole and after an evidentiary hearing to clarify the facts in dispute; especially since both the Supreme Court of Missouri and the Federal District Court for the Western District of Missouri placed some emphasis on the timing of the conversations relating to the possibility of reduced charges.

## I.  EXHAUSTION OF STATE REMEDIES

■     The contentions raised by Hunter in this habeas corpus action are substantially the same as those raised on his appeal to the Supreme Court of Missouri. Therefore, for the purpose of this action, Hunter has exhausted his state remedies even though he has not complied with state post conviction procedures under Missouri Supreme Court Rule 27.26, V.A.M.R. This Court held in Edwards v. Swenson, 429 F.2d 1291, 1293 (8th Cir. 1970) that a Missouri prisoner need not pursue his post conviction remedy under Rule 27.26 where the merits of his contentions had already been determined by the Missouri Supreme Court on direct appeal. See also Connors v. State, 422 F.2d 122, 125 (8th Cir.), cert. denied, 398 U.S. 954, 90 S.Ct. 1881, 26 L.Ed.2d 297 (1970); Kennedy v. Sigler, 397 F.2d 556, 559 (8th Cir. 1968). Accord, United States ex rel. Adams v. Pate, 418 F.2d 815, 817 (7th Cir. 1969); Smith v. Peyton, 408 F.2d 1009, 1010 (4th Cir. 1968); Whippler v.

Balkcom, 342 F.2d 388, 390 (5th Cir. 1965).

## II.  ALLEGATIONS CONCERNING ADMISSIBILITY OF THE CONFESSION

■     The Supreme Court of Missouri in State v. Hunter, *supra*, 456 S.W.2d at 316, stated the law of the State of Missouri concerning the admissibility of confessions in that state as follows:

> "[C]onfessions induced by the influence of hope of leniency, State v. Ball, Mo.Sup., 262 S.W. 1043, hope of clemency, State v. Hart, 292 Mo. 74, 237 S.W. 473, or hope of mitigation of punishment for the crime charged, or of 'worldly advantage,' State v. Williamson, 339 Mo. 1038, 99 S.W.2d 76, are not voluntary and are not admissible in evidence."

In so stating the law, the Missouri Supreme Court did not cite State v. White, 316 Mo. 576, 292 S.W. 411 (1927), a case which presents a fact situation very similar to that of this case. White, while in jail and charged with murder in the first degree, confessed after the prosecuting attorney had promised him he would recommend minimum punishment and had told him that a co-defendant had confessed. The Court stated:

> "By all the authorities that confession was not voluntary. The defendant was in jail at the time, and his interview was with the prosecuting attorney and the sheriff—persons in authority—and the law presumes that a confession thus induced is involuntary."

State v. White, *supra*, 316 Mo. at 580, 292 S.W. at 412. The distinguishing factor between the *White* case and that of Hunter is that the alleged promise was made directly, rather than indirectly, by the prosecuting attorney and was made after the murder charge had been filed. However, this is a distinction without a substantial difference inasmuch as the alleged promise was made by a "person in authority". In Hunter's

case, Sgt. Shirley was such a "person in authority".

This Court, however, must apply the federal standard in cases such as this. As stated in Cummings v. United States, 398 F.2d 377, 381–382 (8th Cir. 1968):

> "The standard to be applied by this Court in determining whether a confession is incompetent because not voluntary 'is controlled by that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person "shall be compelled in any criminal case to be a witness against himself." ' Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). 'Under this test, the constitutional inquiry is not whether the conduct of * * * officers in obtaining the confession was shocking, but whether the confession was "free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." ' Malloy v. Hogan, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964)."

See also Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963). In Brady v. United States, 397 U.S. 742, 754, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), the Supreme Court noted:

> "*Bram* dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess."

■ Since Hunter has stated in his petition for habeas corpus that his confession was procured by false promises of a reduced charge for his cooperation at a time when he was in jail and unrepresented by counsel, we conclude that his petition did make allegations which would, if proven to be correct, properly be the basis for the relief requested. Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971).

## III. NECESSITY OF EVIDENTIARY HEARING

Since Hunter has exhausted his state remedies and made allegations which if proven to be true could be the basis for granting the writ, we pass now to the question of whether an evidentiary hearing should have been granted.

■ In the case of Townsend v. Sain, 372 U.S. 293 at 313, 83 S.Ct. 745, at 757, 9 L.Ed.2d 770 (1963) the Supreme Court held "that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the *fact-finding* procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." In 1966 these requirements were codified by 28 U.S.C. § 2254(d). See Hawkins v. Bennett, 423 F.2d 948, 950 (8th Cir. 1970); Howard v. Swenson, 404 F.2d 469, 472 (8th Cir. 1968); White v. Swenson, 261 F.Supp. 42, 60 (W.D.Mo. 1966) (en banc); Lay, Post Conviction Remedies and the Overburdened Judiciary: Solutions Ahead, 3 Creighton L. Rev. 5, 11–12 (1969). 28 U.S.C. § 2254(d) provides that the decision of the state court shall be presumed correct unless the petition comes within one of a number of specified exceptions. One of the exceptions is "that the material facts were not adequately developed at the State court hearing." 28 U.S.C. § 2254(d) (3); Townsend v. Sain, *supra*,

372 U.S. at 313, 83 S.Ct. 745; Hawkins v. Bennett, *supra,* 423 F.2d at 950; Howard v. Swenson, *supra,* 404 F. 2d at 472; Roach v. Bennett, 392 F.2d 743, 748 (8th Cir. 1968). Another exception is "that such factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d) (8); Townsend v. Sain, supra, 372 U.S. at 313, 83 S.Ct. 745; Hawkins v. Bennett, *supra,* 423 F.2d at 950; Howard v. Swenson, *supra,* 404 F.2d at 472. Accord, Anderson v. Nelson, 432 F.2d 55, 56 (9th Cir. 1970); O'Neal v. Smith, 413 F.2d 269, 270–271 (5th Cir. 1969). Both of these exceptions tend to overlap. In looking for guidance to their meaning, we turn to *Townsend.* In speaking of these exceptions, *Townsend* observed that:

> "This Court has consistently held that state factual determinations not fairly supported by the record cannot be conclusive of federal rights." *Townsend, supra,* 372 U.S. at 316, 83 S.Ct. at 758.

Townsend then provided:

> "Where the fundamental liberties of the person are claimed to have been infringed, we carefully scrutinize the state-court record. * * * The duty of the Federal District Court on habeas is no less exacting." *Townsend, id.*

and

> "The duty to try the facts anew exists in every case in which the state court has not after a full hearing reliably found the relevant facts." *Townsend, supra,* at 318, 83 S.Ct. at 759.

Having carefully scrutinized the state court records and for reasons already mentioned, this Court believes that Sgt. Shirley's discussion with Hunter concerning a possible lesser charge on August 5, 1968 was a material and relevant fact which, because of the omission of Sgt. Rhoades' testimony at the state court trial of Hunter, was not adequately developed. In determining that there was no discussion of the so-called "deal" on August 5, 1968, the State Supreme Court appears to have made an incorrect fact determination that could have influenced its primary decision that Hunter's confession was voluntary. Therefore, in accordance with 28 U.S.C. § 2254(d) (3) and (8) and *Townsend,* an evidentiary hearing on the allegations contained in Hunter's petition is mandatory.

Reversed and remanded with directions to hold an evidentiary hearing.

STEPHENSON, Chief District Judge (dissenting).

I dissent. I am satisfied, from an examination of the entire record herein, that the factual issues relating to appellant's claim that his statement [1] was involuntary were fully developed and resolved in state trial court proceedings, after a full and fair hearing which resulted in a finding that appellant's statements, written and oral, were voluntary. This finding was amply supported by the record before the state trial court. Appellant is not entitled to another plenary hearing on the same issues. 28 U.S.C. § 2254(d); Townsend v. Sain, 372 U.S. 293, 312–316, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1913); Wade v. Yeager, 377 F. 2d 841, 844 (3d Cir. 1967), cert. denied, 393 U.S. 893, 89 S.Ct. 218, 21 L.Ed.2d 173 (1968).

On March 11, 1969, more than six weeks prior to trial, the state court conducted a hearing on appellant's motion to suppress the statement in dispute upon the grounds that the same was involuntary and given by the appellant while he was under the impression that he was to be given leniency if he cooperated in giving a statement. Appellant, who was represented by two attorneys, testified during this hearing, as did the two officers, Sgt. Shirley and Sgt. Rhoades, who were present when his statement was taken. After hearing the evidence, Judge Yeaman specifically found that the statement in question

---

[1]. At issue is the voluntariness of a written statement and oral statements made in connection therewith.

"* * * was voluntarily made by the defendant, was not procured by coercion or threats or through fear, was not induced by promises of leniency. The Court finds that the statement in question is competent evidence and therefore overrules the defendant's objections and admits the statement in evidence." The Court, in response to a question by counsel for the defendant, made it clear that the ruling of admissibility applied to all oral statements, as well as the written statement in question. After ruling on the motion to suppress, the Court conducted a hearing on defendant's motion to produce, inspect, and copy, during which the prosecuting attorney was examined under oath concerning the existence or non-existence of any information in his possession favorable to the defendant. At the close of the hearing, the Court spoke concerning the prosecutor's duty and burden in the subsequent trial to establish that the statements taken from the defendant were voluntary, requested the court reporter to transcribe that part of the record having to do with the motion to suppress and directed him to furnish a copy to the court, defense counsel and the prosecutor.

During the trial which commenced April 30, 1969, a hearing concerning the voluntariness of appellant's statements was held out of the presence of the jury in compliance with Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). At the commencement of the hearing, the trial court [2] made specific inquiry of both of defendant's attorneys and defendant Hunter as to whether they had had an opportunity to read the transcript of the hearing before Judge Yeaman on the motion to suppress. Both the defendant and his attorneys replied in the affirmative. Counsel for the defendant then stated that the defendant was prepared to agree that Sgt. Shirley's testimony as it was previously given on the motion to suppress be used in the trial, reserving the right to offer additional testimony. The defendant specifically stated he was in agreement with this procedure. The transcript of Sgt. Shirley's testimony given in the hearing on motion to suppress was then received in evidence. Lois Sowards, who transcribed defendant's statement, was then examined and thoroughly cross-examined concerning the taking of the written statement and oral conversations that she heard between defendant and the patrolmen when she was present. Sgt. Shirley was also called for a brief interrogation. Defendant Hunter took the stand and testified in great detail concerning his various conversations with the patrolmen. At the close of his direct testimony, defendant's counsel invited him to make any statement to the court concerning matters that were not covered. The defendant also offered in evidence a transcript of a part of the testimony of Sgt. Shirley given at the preliminary hearing on October 2, 1968.

After hearing the arguments of counsel, the trial court expressed some concern as to the legal effect of the words used by Sgt. Shirley in the hearing on the motion to suppress and observed that that would be a matter for the Appellate Court.[3]

---

2. Judge Schoenlaub presided. Defendant was represented by two attorneys, but they were not the same attorneys who represented him at the hearing on the motion to suppress heard before Judge Yeaman.

3. "THE COURT: I am concerned about the testimony of Sergeant Shirley that was found on page twenty-seven of the March 11 transcript. The legal effect of those words is a matter that will have to be determined by an appellate court, if this matter is appealed. Also, I do have considerable doubt because of that one point. I am going to overrule the objections. It is the finding of this Court that the defendant was adequately advised of his rights under the Constitution as shown by Plaintiff's Exhibits 2 and 4 and the testimony of Sergeant Shirley concerning the advice which he did give to the defendant. It is further the finding of this Court that the statements were voluntarily made by the defendant;

My colleagues are concerned because the Supreme Court of Missouri (State v. Hunter, 456 S.W.2d 314 at 321) and the United States District Court found there was no discussion of a "deal" on August 5, 1969, when appellant made and signed his statement. Taking the evidence favorable to appellant, the most that can be said is that Sgt. Shirley advised appellant "* * * its possible that Mr. Lance [prosecutor] would consider a lesser charge if he [appellant] would cooperate." It is very difficult for me to read into these words a promise, express or implied, that leniency would be shown in exchange for a statement. When other factors are considered, including appellant's long criminal record [4] and his expressed antagonism toward prosecutor Lance in the early stages of the investigation, I find it impossible to conclude from this record that appellant's statements were involuntary or induced by promises of leniency. The most that can be said for appellant is that he was familiar with the criminal law and knew of his rights as well as the choices open to him. He wanted to make a deal, failing in this he could always claim he thought he had one, or do as he threatened, claim that he was not advised of his rights.[5]

I fail to see the value of another evidentiary hearing on the issue of voluntariness. This matter was originally gone into in the preliminary hearing on October 2, 1968. It was thoroughly ventilated in the hearing on the motion to suppress heard on March 11, 1969. Transcripts of the foregoing were available to appellant and his counsel at the time of the trial. Appellant stipulated that the transcript of Sgt. Shirley's testimony given in the hearing on the motion to suppress be made a part of the record on the issue of voluntariness. Sgt. Shirley was also available and did testify briefly, and was available for cross-examination by the defendant. A transcript of Sgt. Rhoades' testimony given during the hearing on the motion to suppress was likewise available to defendant and his counsel. Sgt. Rhoades had testified that he heard Sgt. Shirley say "its possible." On cross-examination he stated he thought this meant there might be some leniency shown to defendant by the Prosecuting Attorney if the defendant were to give a statement. He also volunteered that "its possible" may have related to the prosecuting attorney coming down to see the defendant. Neither side chose to call Sgt. Rhoades or use the transcript of his tes-

that they were not procured by coercion or threats or through fear and were not induced by promises of leniency. The Court, therefore, finds that these statements in question are constitutionally admissible and competent evidence and, therefore, the defendant's objections are overruled and the statement, Plaintiff's Exhibit 3, is received in evidence, and the witness will be permitted to testify concerning the oral statements which the defendant also made." (the testimony of Sgt. Shirley is set out in Fn. 2 of the majority opinion.)

4. Apparently four felony convictions in Kansas. Two in Missouri.

5. Sgt. Shirley testified during the trial:
"Q Sergeant Shirley, you were present at the time this statement I read was made, is that correct?
A Yes.
Q You were asking at least some of questions?
A I asked the majority of them.
Q What else, if anything, did Mr. Hunter say on that date?
A Well, I asked Mr. Hunter what he thought would happen when this statement was signed and brought back, in the event that the Andrew County Prosecuting Attorney saw fit to file a charge of first-degree murder, and he stated to me at that time, as I related last night, practically the same thing. That he would state that I had not informed him of his rights and that he had not understood his rights and he said, 'They will believe me and not you,' and then again he reiterated the fact he had two witnesses, one of which was a reverend, that would attest to the fact he had stayed at his home that night, and again he said he would have himself declared mentally incompetent."

timony. After the trial court's determination of voluntariness, appellant's statements were admitted. Thereafter, the jury was properly instructed that before the jury could consider an alleged statement of the defendant, oral or written, it must have been made voluntarily.

I am satisfied that appellant had a full hearing and that all of the relevant facts were developed under the guiding hand of counsel.[6] Proper findings, amply supported by the evidence, were made by the trial court. The Supreme Court of Missouri has affirmed the finding of voluntariness. I would affirm the district court's denial of the petition and its refusal to grant an evidentiary hearing herein.

---

6. Cf. Hawkins v. Bennett, 423 F.2d 948 (8th Cir. 1970).